Carr P. COLLINS et al., Appellants,

v.

John L. LEWIS et al., Appellees.

No. 12831.

Court of Civil Appeals of Texas. Galveston.

Oct. 13, 1955.

Rehearing Denied Nov. 3, 1955.

Fulbright, Crooker, Freeman, Bates & Jaworski, Chas. W. Bell and Austin C. Wilson, Houston, for appellants.

Kelley & Ryan, R. H. Kelley, C. O. Ryan, Houston, Hollers, O'Quinn & Crenshaw and Hardy Hollers, Austin, for appellees.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Harris County by the appellants, who, as the owners of a fifty per cent (50%) interest in a partnership known as the L–C Cafeteria, sought a receivership of the partnership business, a judicial dissolution of the partnership, and foreclosure of a mortgage upon appellees' interest in the partnership assets. Appellees denied appellants' right to the relief sought, and filed a cross-action for damages for breach of contract in the event dissolution should be decreed. Appellants' petition for receivership having been denied after a hearing before the court, trial of the issues of dissolution and foreclosure, and of appellees' cross-action, proceeded before the court and a jury. At the conclusion of such trial, the jury, in response to special issues submitted, returned a verdict upon which the trial court entered judgment denying all relief sought by appellants.

The facts are substantially as follows:

In the latter part of 1948 appellee John L. Lewis obtained a commitment conditioned upon adequate financial backing from the Brown-Bellows-Smith Corporation for a lease on the basement space under the then projected San Jacinto Building for the purpose of constructing and operating a large cafeteria therein. Lewis contacted appellant Carr P. Collins, a resident of Dallas, proposing that he (Lewis) would furnish the lease, the experience and management ability for the operation of a cafeteria, and Collins would furnish the money; that all revenue of the business, except for an agreed salary to Lewis, would be applied to the repayment of such money, and that thereafter all profits would be divided equally between Lewis and Collins. These negotiations failed to materialize because of the inability of Lewis to conclude satisfactory terms with the building owners. Thereafter, in 1949, negotiations along substantially the same terms were reopened, and culminated in the execution between the building owners, as lessors, and Lewis and Collins, as lessees, of a lease upon such basement space for a term of 30 years. Thereafter Lewis and Collins entered into a partnership agreement to endure throughout the term of the lease contract. This agreement is in part evidenced by a formal contract between the parties, but both litigants concede that the complete agreement is ascertainable only from the verbal understandings and exchanges of letters between the principals. It appears to be undisputed that originally a corporation had been contemplated, and that the change to a partnership was made to gain the advantages which such a relationship enjoys under the internal revenue laws. The substance of the agreement was that Collins was to furnish all of the funds necessary to build, equip, and open the cafeteria for business. Lewis was to plan and supervise such construction, and, after opening for business, to manage the operation of the cafeteria. As a part of his undertaking, he guaranteed that moneys advanced by Collins would be repaid at the rate of at least $30,000, plus interest, in the first year of operation, and $60,000 per year, plus interest, thereafter, upon default of which Lewis would surrender his interest to Collins. In addition Lewis guaranteed Collins against loss to the extent of $100,000. In the partnership agreement fifty per cent interest therein is reflected to be owned by Collins and certain members of his family, in stated proportions, and the other fifty per cent is reflected to be owned by Lewis and members of his family. However, in their conduct of the business of the partnership, it is conceded by all litigants that Lewis and Collins completely controlled the respective equal fifty per cent interests in the business to the same extent

as if the actual ownership were so vested. For the purpose of this opinion, they are treated as if that were in fact the case.

Immediately after the lease agreement had been executed Lewis began the preparation of detailed plans and specifications for the cafeteria. Initially Lewis had estimated, and had represented to Collins, that the cost of completing the cafeteria ready for operation would be approximately $300,000. Due to delays on the part of the building owners in completing the building, and delays in procuring the equipment deemed necessary to opening the cafeteria for business, the actual opening did not occur until September 18, 1952, some 2½ years after the lease had been executed. The innumerable problems which arose during that period are in part reflected in the exchange of correspondence between the partners. Such evidence reflects that as to the solution of most of such problems the partners were in entire agreement. It further reflects that such disagreements as did arise were satisfactorily resolved. It likewise appears that the actual costs incurred during that period greatly exceeded the amount previously estimated by Lewis to be necessary. The cause of such increase is disputed by the litigants. Appellants contend that it was brought about largely by the extravagance and mismanagement of appellee Lewis. Appellees contend that it resulted from inflation, increased labor and material costs, caused by the Korean War, and unanticipated but necessary expenses. Whatever may have been the reason, it clearly appears that Collins, while expressing concern over the increasing cost, and urging the employment of every possible economy, continued to advance funds and pay expenses, which, by the date of opening for business, had exceeded $600,000.

Collins' concern over the mounting costs of the cafeteria appears to have been considerably augmented by the fact that after opening for business the cafeteria showed expenses considerably in excess of receipts. Upon being informed, shortly after the cafeteria had opened for business, that there existed incurred but unpaid items of cost over and above those theretofore paid, Collins made demand upon Lewis that the cafeteria be placed immediately upon a profitable basis, failing which he (Collins) would advance no more funds for any purpose. There followed an exchange of recriminatory correspondence between the parties, Collins on the one hand charging Lewis with extravagant mismanagement, and Lewis on the other hand charging Collins with unauthorized interference with the management of the business. Futile attempts were made by Lewis to obtain financial backing to buy Collins' interest in the business. Numerous threats were made by Collins to cause Lewis to lose his interest in the business entirely. This suit was filed by Collins in January of 1953.

The involved factual background of this litigation was presented to the jury in a trial which extended over five weeks, and is reflected in a record consisting of a transcript of 370 pages, a statement of facts of 1,400 pages, and 163 original exhibits. At the conclusion of the evidence 23 special issues of fact were submitted to the jury. The controlling issues of fact, as to which a dispute existed, were resolved by the jury in their answers to Issues 1 to 5, inclusive, in which they found that Lewis was competent to manage the business of the L–C Cafeteria; that there is not a reasonable expectation of profit under the continued management of Lewis; that but for the conduct of Collins there would be a reasonable expectation of profit under the continued management of Lewis; that such conduct on the part of Collins was not that of a reasonably prudent person acting under the same or similar circumstances; and that such conduct on the part of Collins materially decreased the earnings of the cafeteria during the first year of its operation. In their briefs the litigants make widely divergent claims relative to the factual conclusions properly to be drawn from the evidence, as well as the legal effect thereof. This Court has been able to resolve such differences only by a most detailed examination of the entire record. From that examination we conclude not only that there is ample support for the findings of the jury which we consid-

er to be controlling, but further that upon the entire record, including such findings, the trial court entered the only proper judgment under the law, and that that judgment must be in all things affirmed.

Appellants present seven asserted points of error. Points one to four, inclusive, present appellants' contention that the trial court erred in refusing to dissolve the partnership. Points five to seven, inclusive, present their contention that the trial court erred in refusing to foreclose appellant Collins' lien upon the appellees' interest in the partnership.

As we understand appellants' position relative to their points one to four, they contend that there is no such thing as an indissoluble partnership; that it is not controlling or even important, in so far as the right to a dissolution is concerned, as to which of the partners is right or wrong in their disputes; and finally, that whenever it is made to appear that the partners are in hopeless disagreement concerning a partnership which has no reasonable expectation of profit, the legal right to dissolution exists. In support of these contentions appellants cite numerous authorities, all of which have been carefully examined. We do not undertake to individually distinguish the authorities cited for the reason that in no case cited by appellants does a situation analogous to that here present exist, namely, that the very facts upon which appellants predicate their right to a dissolution have been found by the jury to have been brought about by appellant Collins' own conduct, in violation of his own contractual obligations.

We agree with appellants' premise that there is no such thing as an indissoluble partnership only in the sense that there always exists the power, as opposed to the right, of dissolution. But legal right to dissolution rests in equity, as does the right to relief from the provisions of any legal contract. The jury finding that there is not a reasonable expectation of profit from the L–C Cafeteria under the continued management of Lewis, must be read in connection with their findings that Lewis is competent to manage the business of L–C Cafeteria, and that but for the conduct of Collins there would be a reasonable expectation of profit therefrom. In our view those are the controlling findings upon the issue of dissolution. It was Collins' obligation to furnish the money; Lewis' to furnish the management, guaranteeing a stated minimum repayment of the money. The jury has found that he was competent, and could reasonably have performed his obligation but for the conduct of Collins. We know of no rule which grants Collins, under such circumstances, the right to dissolution of the partnership. The rule is stated in Karrick v. Hannaman, 168 U.S. 328, 18 S.Ct. 135, 138, 42 L.Ed. 484, as follows: "A court of equity, doubtless, will not assist the partner breaking his contract to procure a dissolution of the partnership, because, upon familiar principles, a partner who has not fully and fairly performed the partnership agreement on his part has no standing in a court of equity to enforce any rights under the agreement." It seems to this Court that the proposition rests upon maxims of equity, too fundamental in our jurisprudence to require quotation.

The basic agreement between Lewis and Collins provided that Collins would furnish money in an amount sufficient to defray the cost of building, equipping and opening the L–C Cafeteria for operation. As a part of the agreement between Lewis and Collins, Lewis executed, and delivered to Collins, a mortgage upon Lewis' interest in the partnership "until the indebtedness incurred by the said Carr P. Collins * * * has been paid in full out of income derived from the said L–C Cafeteria, Houston, Texas."

The evidence shows that a substantial portion of the money used to build, equip and open the cafeteria was borrowed by Collins from the First National Bank in Dallas. The bank credit was admittedly extended upon Collins' financial responsibility. In the mechanics of arranging for such credit, however, Collins prepared and requested Lewis and his family to execute notes in the total sum of $175,000 payable

to the First National Bank in Dallas on demand. Lewis expressed concern at creating an obligation payable on terms which he felt unable to meet, whereupon Collins addressed a signed letter to Lewis, containing language as follows: " * * * If you are apprehensive because of the fear that there might be a foreclosure of these notes or a failure to renew these notes for a sufficient period of time to liquidate them at a rate of not more than $2,500 per month the first year and $5,000 per month the second year, I can assure you that the notes will be renewed as often as is necessary to protect you on that point. I have never had in mind any arrangement other than that the notes would be carried for an indefinite time. * * * My arrangement with you in regard to this financing would be binding on my estate or until the obligation was fully discharged." Collins testified that after execution and delivery of the notes to him by Lewis, he endorsed them and guaranteed their payment to the bank.

At about the time this suit was instituted, the First National Bank in Dallas made demand upon Lewis for payment of the notes described, thus maturing the liability of Collins upon his endorsement of the notes. The failure of Lewis to pay such notes on demand constitutes the default, by reason of which Collins seeks foreclosure of his mortgage on Lewis' interest in the partnership. We are unable to agree with appellants in this contention, and must overrule their points presenting it. Regardless of the legal relationship between Lewis and the First National Bank in Dallas, created by the notes described, Lewis' obligation to Collins is limited to repaying money advanced by Collins at the minimum rate of $30,000 the first year and $60,000 per year thereafter. Only upon default of that obligation does the right of foreclosure ripen. There is testimony in the record to the effect that Collins, as a director and stockholder in the Dallas Bank had induced the bank to make demand for payment in order to effect foreclosure. That proof appears to us to be entirely immaterial to the determination of the rights of these litigants. The proof is undisputed that the bank, after maturing the notes, took no further steps to effect collection. Aside from that, however, as we construe the partnership agreement, it was Collins' obligation to furnish all money needed to build, equip and open the cafeteria for business. With particular reference to the notes, it was Collins' obligation to protect Lewis against any demand for payment so long as Lewis met his obligation of repaying money advanced by Collins at the rate agreed upon. Failure on Collins' part to protect Lewis on his obligation to the bank would constitute a breach of contract by Collins.

■ Collins' right to foreclose, therefore, depends upon whether or not Lewis has met his basic obligation of repayment at the rate agreed upon. Appellees contend, we think correctly, that he has, in the following manner: the evidence shows that Collins advanced a total of $636,720 for the purpose of building, equipping and opening the cafeteria for business. The proof also shows that Lewis contended that the actual cost exceeded that amount by over $30,-000. The litigants differed in regard to such excess, it being Collins' contention that it represented operating expense rather than cost of building, equipping and opening the cafeteria. The jury heard the conflicting proof relative to these contentions, and resolved the question by their answer to Special Issue 20, whereby they found that the minimum cost of building, equipping and opening the cafeteria for operation amounted to $697,603.36. Under the basic agreement of the partners, therefore, this excess was properly Collins' obligation. Upon the refusal of Collins to pay it, Lewis paid it out of earnings of the business during the first year of its operation. Thus it clearly appears that Lewis met his obligation, and the trial court properly denied foreclosure of the mortgage.

■ In their brief, appellants repeatedly complain that they should not be forced to endure a continuing partnership wherein there is no reasonable expectation of profit, which they say is the effect of the trial

court's judgment. The proper and equitable solution of the differences which arise between partners is never an easy problem, especially where the relationship is as involved as this present one. We do not think it can properly be said, however, that the judgment of the trial court denying appellants the dissolution which they seek forces them to endure a partnership wherein there is no reasonable expectation of profit. We have already pointed out the ever present inherent power, as opposed to the legal right, of any partner to terminate the relationship. Pursuit of that course presents the problem of possible liability for such damages as flow from the breach of contract. The alternative course available to appellants seems clearly legible in the verdict of the jury, whose services in that connection were invoked by appellants.

Judgment affirmed.