Arthur S. Bluestein, Plaintiff-Appellant, v. Irwin J. Davis, et al., South Side Bank and Trust Co., Reserve Insurance Company, a Corporation, Defendants-Appellees.

Gen. No. 50,923.

First District, Third Division.

May 11, 1967.

Rehearing denied July 18, 1967.

 █ 

I. Harvey Levinson and Melvin E. Levinson, of Chicago (Melvin E. Levinson, of counsel), for appellant.

George J. Anos and Joseph Ash, of Chicago (Leonard Malkin of counsel), for appellees, Harold J. Green and South Side Bank & Trust Company.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a decree dismissing plaintiff's complaint, (a creditor's bill) for want of equity and assessing all costs against plaintiff.

Plaintiff is a judgment creditor of defendant, Davis. The debt arose out of legal services rendered and money loaned by plaintiff to Davis. By his creditor's bill plaintiff seeks to reach and apply to the satisfaction of the judgment moneys due to Davis by virtue of a partnership of Davis and defendant, Green, which moneys may have come into the hands of defendant, South Side Bank and Trust Company, (Bank).

Plaintiff contends on appeal that (1) the partnership of Davis and Green was not illegal and that, even if it were, that defense would not be available to Green and/or the Bank; (2) Green should be made to account for the profits of Merit Insurance Agency, and (3) he (Bluestein) is entitled to recover Davis' share of the City Wide profits from the Bank.

On November 13, 1952, Davis, then operator of Liberal Motors Corporation, a used car dealership, formed City Wide Insurance Agency, a partnership with Green, for the purpose of "carrying on of the business of insurance

brokers." It should be noted that Liberal Motors was financed by defendant Bank, and that Green was the owner of ninety-five percent of the Bank's stock. Under the partnership agreement Green was to secure all of the insurance and Davis was to run the business aspects of the venture. The business was operated from Liberal Motors' offices. City Wide's only source of business was the Bank. It wrote insurance on automobiles on which the Bank held chattel mortgages and in which the Bank was named as a "loss payee." All of its policies were placed with Reserve Insurance Company, with which Green, doing business as City Wide Insurance Agency, held an agency agreement.

Green was a licensed insurance broker but Davis had no such license. There is a conflict in testimony as to whether Green had requested that Davis procure a broker's license, but the partnership agreement did not require him to do so.

City Wide's income was derived from premiums paid to Reserve. Eighty-five percent of the premiums paid in were credited to City Wide but held by Reserve against claims payable. The difference between the eighty-five percent and the losses paid was the net commission earned by the partnership. Fifteen percent was Reserve's charge for issuing the policies.

Davis at that time was also operating Liberal Motors. However, sometime in November or December of 1953, according to Davis' testimony, he experienced financial difficulty because the Bank was requiring that he buy back all defaulted automobiles at full contract price, although he was under no legal obligation to do so. When he complained of this to Green, he was told that was the only way the Bank would do business. Thereafter Davis closed Liberal Motors, claiming that the Bank discontinued his line of credit.

Once Liberal Motors ceased operations, City Wide was left without an office. Davis then turned over the

City Wide books and records to the Bank. The Bank used two of its employees to service the outstanding policies on about three thousand automobiles, until those policies expired. City Wide issued no new policies thereafter, and the insurance business of the Bank was transferred to Green, doing business as Merit Insurance Agency. When the records were turned over to the Bank, City Wide had a deficit of twenty-five thousand dollars ($25,000), but by June of 1956, when the last policy expired, there had accrued net profits of $8,429.17 in the City Wide account.

In September, 1953, Davis was indebted to plaintiff in the amount of $13,252, for which amount he gave plaintiff an assignment of any moneys due him from the partnership. On July 26, 1954, plaintiff recovered a judgment against Davis in the amount of $14,511.66; execution was returned no property found. The Bank introduced evidence that Davis, when he obtained financing for Liberal Motors, orally pledged his share of City Wide's profits as extra collateral for the Liberal Motors' loan. Richard P. Larsen, president of the Bank, testified that in November, 1953, Davis stated that his interest in the profits could be used to defray the Bank's expenses in liquidating City Wide. Davis also was indebted to the Bank on personal promissory notes.

Plaintiff first contends that the partnership of Green and Davis was not illegal and that, even if it were, that defense would not be available to Green and/or the Bank. The question of illegality arises because Davis was at no time a licensed insurance broker. The Illinois Insurance Code (Ill Rev Stats 1957, c 73), and the Municipal Code of Chicago (c 113) regulate the business of insurance. Among other things, these acts seek to protect the general public from unqualified and/or unscrupulous insurance salesmen. Section 489 of the Illinois act provides:

"This article shall apply to all agents, brokers and solicitors as may be defined herein."

Brokers are defined in section 490 as:

"Any person, partnership, association or corporation, who or which acts or aids in any manner in the solicitation or negotiation, for or on behalf of the assured, with or without compensation, of policies or contracts for insurance covering property or risks in this State of the kinds enumerated in Section 4."

Section 492 provides in part:

"No person, partnership, association or corporation shall act as an agent, broker or solicitor without first procuring a license so to act from the Director."

Further, section 493 provides in part:

"Money, commission or brokerage or allowance of anything of value, including service fees, for or on account of solicitation, negotiation or effecting of policies or contracts for insurance of the kind or kinds enumerated in Section 4 on property or risks in this State may be paid:

"(1) By a company only to its duly licensed agent or to a duly licensed broker;
"(2) By an agent only to his duly licensed solicitor or to a duly licensed agent for the same company acting under his direct supervision, or to a duly licensed broker;
"(3) By a broker only to his duly licensed solicitor or to a duly licensed broker."

The Municipal Code (c 113, §§ 9, 10 and 14) is similar in language, denotation and spirit.

It is plaintiff's contention that the City Wide arrangement did not violate the language nor the spirit of the

65

Codes. It was shown that Davis in no way solicited or negotiated the policies; rather he handled the clerical and managerial ends of the business. It is further claimed that he was not to receive commissions but only the net profits of the operation. Due to those facts, it is claimed that he came within section 491 of the Illinois Insurance Code, which reads in part:

"This article shall not apply to the following:

". . .

"(3) Employees engaged solely and exclusively in office duties and not engaged in solicitation or effecting of insurance for any company, agent or broker;

". . .

"(5) Officers of companies engaged in the performance of their usual customary executive duties who are not individually engaged in the solicitation or negotiation of policies or contracts for insurance."

Plaintiff's point is well taken. Although defendants cite several cases in support of their position that the partnership was illegal, those cases all involved persons seeking recovery for services prohibited by the statutes in question. That is, these plaintiffs had actually acted in the capacity prohibited unless licensed. In the instant case Davis never acted as a broker nor held himself out to the public as one. The partnership agreement provided that Green was to perform all the brokerage acts. It further provided that Davis was to receive not commissions, but net profits. The agency contract with Reserve was in Green's name only, and, since all of City Wide's business was with Reserve, it was only Green who solicited and placed the policies.

Having determined that the partnership was not illegal, it is unnecessary to discuss the question of whether a defense of illegality is available to Green or the Bank.

■ Plaintiff next contends that Green should be made to account for the profits of Merit. About the time that Davis ceased doing business with City Wide and turned over the books and records to the Bank, Green took over the business of the Bank's insurance interests, in the name of Merit. He also caused the agency agreement with Reserve to be changed to the Merit agency. Green procured new policies for the automobiles financed by the Bank, but did not service those issued through City Wide. Plaintiff theorizes that, since neither Davis nor Green complied with the provisions in their partnership agreement regarding termination or dissolution, the partnership and accompanying fiduciary relationship continued. If this were true then Green would have to account for profits made in breach of that relationship. Metcalfe v. Bradshaw, 145 Ill 124, 33 NE 1116. However, the statute provides that dissolution of a partnership is the change of the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business. (Ill Rev Stats 1957, c 106½, par 29.) Section 31 of that Act provides that dissolution may be caused, in contravention of the agreement, by the express will of any partner at any time. Once Davis left City Wide the partnership was dissolved. Although the dissolution may have been in contravention of the agreement, nonetheless the fiduciary relationship ceased and Green was free to do business on his own under the name of Merit. Meyer v. Sharp, 341 Ill App 431, 94 NE2d 510.

Plaintiff finally contends that he is entitled to recover from the Bank Davis' share of the final net profits of City Wide. The Bank, on the other hand, claims that

Davis pledged these profits (if any) as security against his other indebtedness to the Bank or, in the alternative, that the Bank has a right to rely on the principal of equitable setoff.

Although there was testimony by an officer of the Bank that Davis had on more than one occasion pledged his share of the partnership profits, the master in his report found that there was no such agreement, oral or written. It has been held that the findings of the master, when approved by the chancellor, will not be disturbed unless they are against the manifest weight of the evidence. (Gallagher v. Girote, 23 Ill2d 170, 177 NE2d 103; Barker v. Barker, 36 Ill App2d 20, 183 NE2d 518), and we cannot say that this finding was erroneous.

Plaintiff is a judgment creditor of Davis seeking to reach property in the hands of the Bank. While ordinarily a judgment creditor filing a creditor's bill will be preferred to other creditors (Cole v. Marple, 98 Ill 58, 38 Am Rep 83; Reis v. Ravens, 68 Ill App 53), this rule is not applicable to defendant creditors who would have a right of setoff against the judgment debtor. Bonte v. Cooper, 90 Ill 440, illustrates that exception. Bonte was a judgment creditor of one Hinman. Hinman was indebted to Cooper, who came into possession of money belonging to Hinman, in the amount of that debt. The court, realizing that if Hinman were to sue for his money, Cooper would have the right to a setoff, refused to sustain the creditor's bill against Cooper. In that same case, against another holding money of Hinman's, the court said on page 444: "We do not understand that the judgment creditors of Hinman had any greater or superior right to the money than Hinman himself."

Applying the reasoning of the Bonte case to the case at bar, it becomes apparent that, even in absence

of an express agreement between Davis and the Bank, Davis would be unable to recover the profits of City Wide from the Bank. Clearly the Bank would have the right to set off the Davis' indebtedness to it. Plaintiff, who is not in a position superior to that of his judgment debtor, has no claim nor right to Davis' share of City Wide's profits ($4,214.58) in the hands of the Bank.

Decree affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.