**Wallace P. WOODRUFF et al., Appellants,**

v.

**Lillie O. BRYANT et al., Appellees.**

**No. 1210.**

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 10, 1977.

Rehearing Denied Dec. 8, 1977.

Richard B. Stone, Stone, Berryman & Giles, Corpus Christi, for appellants.

Donald B. Dailey, Jr., Tinker & Dailey, Richard J. Hatch, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a partnership case. Plaintiffs and Defendant, Lillie Bryant, were all partners in a small business named "Flour Bluff Finance Company." Plaintiffs brought suit against Mrs. Bryant for breach of her fiduciary duties not to engage in a similar competing business. Plaintiffs also sued Defendants, James C. Bryant and Harold Easley, for enticing her to breach her fiduciary duties in forming and operating a similar business close to the Flour Bluff Finance Co. Mrs. Bryant cross-claimed for her partnership share of the partnership assets. Trial was to a jury on special issues. The jury answered the issues against Plaintiffs' claims and for Mrs. Bryant on her cross-claims. The trial court entered a take nothing judgment as to the Plaintiffs and awarded Mrs. Bryant a $7,917.75 judgment representing her one-fourth interest in the partnership assets against the Plaintiffs on her cross-action. The Plaintiffs have duly perfected their appeal from this judgment.

Wallace Woodruff, W. B. Stanton and Charles Postel entered into a partnership business forming the Flour Bluff Finance Company. The company was to engage in a small unsecured loan business dealing pri-

marily with loans between $5—$100 in the Flour Bluff area of Corpus Christi. The company was regulated and licensed by the consumer credit commission under Article 5069–1.01 et seq., Tex.Rev.Civ.Stat.Ann. In March of 1969 Howard Barth purchased W. B. Stanton's one-third interest in the partnership for $12,000.00 and Don Woodruff purchased Charles Postel's one-third interest for $12,000.00. In June of 1969, the company hired Lillie Bryant to be the manager of the company. In November of 1969 Lillie Bryant was made a partner in the company; acquiring a one-fourth interest through the payment of $3,000.00 to each of the then partners.

In February, 1971 a dispute arose between Mrs. Bryant and Wallace Woodruff, the company's attorney, over the policy of filing collection suits on the overdue accounts. A partnership meeting was held and a majority of the partners voted to continue the policy of filing suits on the overdue accounts. A couple of months later, Mrs. Bryant resigned as manager and tendered her one-fourth interest to the other partners for sale for $12,000.00. The partners took no action on Mrs. Bryant's letter. Shortly thereafter she left her employment with the company. Mrs. Bryant continued to receive her share of the partnership profits however, even after leaving the company.

In early January, 1972 "Pay Day Loans" began business approximately 100 feet from Flour Bluff Finance Company, making the same type of loans as did Flour Bluff Finance Company. Pay Day Loans was owned by a partnership composed of James Bryant, Harold Easley and James Layton. It was managed by Lillie Bryant until the summer of 1973. Pay Day Loans was sold in November, 1975 and Flour Bluff Finance Company went out of business in March of 1976.

The original cause of action, which is the subject matter of this appeal, was filed in September of 1972. The Plaintiffs sought recovery from Mrs. Bryant, her husband, Mr. Bryant, and Pay Day Loans for breach of a partner's fiduciary duty not to com-

pete, for $75,000.00 in actual and punitive damages, and for a temporary injunction to prevent Lillie Bryant from working for Pay Day Loans. Mrs. Bryant answered the Plaintiffs' claims with a general denial and a cross-action seeking to recover her monetary interest in the partnership. The Plaintiffs' trial petition alleged a cause of action against both Bryants, Harold Easley's widow and estate, and Pay Day Loans for unlawful competition and interference with contractual rights.

The jury, in response to the special issues submitted, found: 1) that Mrs. Bryant intended to dissolve the partnership on April 27, 1971; 2) that Mrs. Bryant ceased to be associated with Flour Bluff Finance Company prior to becoming associated with Pay Day Loans; 3) that Pay Day Loans was a competitor of Flour Bluff Finance Company from January 1, 1972 to November, 1975; that James Bryant (Issue No. 4) and Harold Easley (Issue No. 7) did not induce Mrs. Bryant to assist in forming and engaging in the business of Pay Day Loans (Special Issues No. 5, 6, 8 and 9 were not answered); that Flour Bluff Finance Company was not entitled to any compensation as actual (Issue No. 10) or punitive (Issue No. 11) damages from Pay Day Loans; and 12) that the reasonable net cash market value of Flour Bluff Finance Company partnership on July 27, 1971 was $31,671.00. Based on these findings by the jury, the trial court entered the aforesaid judgment.

The first question presented by this appeal is whether or not the partnership between Mrs. Bryant, Wallace Woodruff, Don Woodruff and Howard Barth d/b/a Flour Bluff Finance Company was dissolved by Mrs. Bryant's letter of April 27, 1971. The Uniform Partnership Act of Texas (Art. 6132a, et seq) discusses three entirely different concepts: "dissolution"; "winding up"; and "termination". See *McKellar v. Bracewell*, 473 S.W.2d 542 (Tex. Civ.App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.). Dissolution is defined as the change in the relationship of the partners caused by any partner ceasing to be associated in the carrying on of the partnership,

as distinguished from the winding up of the business. See Art. 6132b § 29, Tex.Rev.Civ. Stat.Ann. (1970). Generally when a partnership is dissolved, the partnership continues during the period of winding up until all preexisting matters are terminated. See Art. 6132b § 30, Tex.Rev.Civ.Stat.Ann. (1970). Howell, Texas Practice, Vol. 19 § 182 (1973). Dissolution is an act that actually changes the legal relationship of the partnership, and has nothing to do with whether or not the partnership business is continuing or winding up. It is a technical legal concept, unlike the concept of dissolution in other areas, such as corporations. Causes of dissolution are set out in §§ 31 and 32 of the Partnership Act. The causes set out in § 31 are automatic and dissolution occurs immediately upon the happening of the specified event.

■ At common law a partner could dissolve the partnership by giving explicit notice to the other partners. *Green v. Waco State Bank,* 78 Tex. 2, 14 S.W. 253 (1890). Section 31 codifies this common law rule by providing that dissolution can be caused by the "express will" of any partner. But, dissolution does not necessarily terminate the partnership business. Even if the business is to be discontinued, the partnership continues to exist, at least for the limited purpose of winding up. *Boyd v. Leasing Associates, Inc.,* 516 S.W.2d 485 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n. r. e.); *Howell v. Bowden,* 368 S.W.2d 842 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.). See § 30, Art. 6132b. It is only upon termination that the final partnership relationship ceases to exist.

Plaintiffs contend in effect that special issues one and two cannot form the basis of the $7,917.75 award to Lillie Bryant representing her partnership interest in Flour Bluff Finance Company because: 1) she failed to follow the dissolution procedures enumerated in the partnership agreement; 2) that there is no evidence and 3) there is insufficient evidence to support the answers to issues one and two. We agree with their third contention.

■ Plaintiffs argue that Bryant's power to dissolve the partnership could only be exercised if she complied with these contractual dissolution procedures. This is not so. The Texas Uniform Partnership Act codifies the common law rule so that every partner has the inherent *power* to dissolve his partnership even though the partnership agreement might attempt to limit that partner's *right* to dissolve the partnership. This would be true even though in some circumstances, the exercise of this right to dissolve might constitute a breach of the partnership agreement and render the dissolving partner liable for damages resulting from the breach. See Art. 6132b §§ 31, 32, 38, Tex.Rev.Civ.Stat.Ann. (1970); *Collins v. Lewis,* 283 S.W.2d 258 (Tex.Civ.App.—Galveston 1955, writ ref'd n. r. e.); *Bluestein v. Davis,* 86 Ill.App.2d 61, 230 N.E.2d 61 (1967); Hamilton, Texas Practice, Vol. 19 § 190, pp. 183–85 (1973).

■ Next, plaintiffs attack the jury's findings in special issues one and two because there is no evidence or insufficient evidence to support the jury's answers to these issues. In special issue one the jury found that Lillie Bryant intended to dissolve the partnership on April 27, 1971; and in special issue two the jury found that Lillie Bryant's association with Flour Bluff Finance Company ceased prior to her association with Pay Day Loans. A "no evidence" point is a question of law and our review requires us to consider only the evidence and inferences which support the questioned jury findings, disregarding all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. Sup.1965). Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361, 362–63 (1960).

Lillie Bryant testified that in January or February 1971 she became dissatisfied with the partnership policy of filing suit on delinquent accounts. She discussed her dissatisfaction individually with the other partners and at a subsequent partnership meeting the other partners voted to continue the policy. On April 27, 1971 she wrote

a letter[1] to the other partners in which she stated that she was resigning as an employee of the partnership and was offering to sell her share in the partnership. She testified that she wrote the letter because she "wanted to get out of it." Pay Day Loans opened for business on January 3, 1972, approximately six months after the time Lillie Bryant testified her involvement in the partnership operations of Flour Bluff Finance Company had ceased. We overrule the no evidence contentions.

In points of error 4 and 9, plaintiffs complain that the evidence in support of the jury's findings in special issues one and two is "factually insufficient." These factual sufficiency points require the Court of Civil Appeals, in exercise of its fact finding powers, to consider and weigh all of the probative evidence in the case and to set aside the verdict and remand the cause for a new trial if we sustain the points and conclude that the judgment complained of is wrong and unjust. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Ruiz v. Flexonics*, 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).

The record indicates that Lillie Bryant was employed as "company manager" of Flour Bluff Finance Company for approximately six months before she purchased her one-fourth share in the partnership. At the time the partnership agreement was amended to add her as a partner and to designate her as "managing partner", she retained her employee status as "company manager." She testified that the reference to "by-laws" in her letter was a reference to the partnership agreement and that at the time she wrote the letter she had read article 11 of the agreement.[2] Her letter notified the other partners that she was proceeding in accordance with article 11 of the partnership agreement. After her single communication by letter of April 27, 1971, Lillie Bryant took no further initiative to communicate with any of the partners regarding her offer to sell her one-fourth interest for $12,000.00. Lillie Bryant testified that she "hoped" she would hear from the other partners and that they would accept her $12,000.00 offer.

The partners made no written reply to her offer. Lillie Bryant testified that she assumed the partners had rejected her offer

---

1. Lillie Bryant's April 27, 1971 letter to the other partners stated in relevant part as follows:

 "Pursuant to most recent telephone conversations with Mr. Woodruff and Mr. Barth, I here-by submit that my one-fourth share in the Flour Bluff Finance Company be placed before you for sale *in accordance with by-laws* governing the company.

 Be advised that I am in complete accord in remaining as manager, to such a degree of time, that it shall take to properly indoctrinate and train person or persons of your choice to take over my function. It is then proposed that I be dismissed from acting manager.

 Through careful evaluation of worth for my share, I submit that a fair and equitable price shall be $12,000.00. I am *hopeful that agreement* for purchase of my share shall be forthcoming in the most immediate future." (emphasis added)

2. Article 11 of the Flour Bluff Finance Company partnership agreement provides in relevant part as follows:

 "ARTICLE XI. Although it is the intention of the parties for this partnership to operate for an indefinite period, if any of the parties hereto become dissatisfied with the partnership, he shall give ninety (90) days notice to the other partners that he wishes to sell or buy. The value of the interest of each partner shall be made and agreed to by the partners and if the value of the interest of the dissatisfied partner as so fixed is not paid to him in cash in purchase of his interest by the other partners within ninety (90) days, the dissatisfied partner shall have the right to purchase the interest of the other partners for cash at the value so fixed for it; and in such case, the person or persons remaining with the business shall have sole ownership, possession and control of all property thereof, and shall be responsible for and hold the other partners harmless as to any of the debts of the partnership theretofore incurred.

 In the event the net interest of each partner cannot be mutually agreed to within thirty (30) days after receipt of notice, as provided above, the dissatisfied partner shall appoint one arbitrator. The remaining partners shall also appoint one arbitrator. The two arbitrators so appointed shall select a third arbitrator. These three arbitrators will determine the value of the partnership and the decision of the majority of these three arbitrators shall be conclusive and final."

when they failed to respond. She admitted that she would have accepted $9,000.00 for her share but did not communicate this to any of the other partners. Wallace Woodruff, who assumed the duties of managing partner, testified that he tried to talk to Mrs. Bryant about the letter and the reasons for her wanting to leave as company manager, but she avoided him and refused to talk with him.

Lillie Bryant testified she knew the requirements contained in Article 11 of the partnership agreement. She admitted that she did not follow through with the designated procedures even though her letter indicated she was acting in accordance with Article XI, nor did she ever tell the other partners that she wanted to dissolve or terminate the partnership.

The entire record contains overwhelming evidence that although Lillie Bryant discontinued her status as an employee and as managing partner, she maintained her partner status as a silent partner along with Howard Barth and Don Woodruff. Flour Bluff Finance Company from its inception had a managing partner and two or three silent partners who participated by voting only when management decisions were necessary. Wallace Woodruff, who assumed the responsibilities of managing partner, testified he did not discuss partnership business with either Howard Barth or Don Woodruff between July and December, 1971 and that Lillie Bryant was as active in partnership business as the other silent partners were during this period.

Lillie Bryant admitted that her cross-action in this suit was her first attempt to dissolve or terminate the Flour Bluff Finance Company partnership. In October 1971 she told Mr. Easley, a future partner of Pay Day Loans, that she was still a partner in Flour Bluff Finance Company and was still waiting to hear from the other partners concerning her sale offer. It was after this conversation that James Bryant, Mr. Easley, and Mr. Layton organized and became the partners of Pay Day Loans.

Lillie Bryant admitted that she did not become a partner of Pay Day Loans because she could not be a partner in two loan companies at the same time. She also admitted that as long as she retained her partnership interest in Flour Bluff Finance Company she thought her employment with Pay Day Loans would not violate the covenant not to compete contained in Article XIII of Flour Bluff Finance Company's partnership agreement. Article XIII provides as follows:

"*In the event one of the partners sells his interest in the partnership business,* he hereby agrees not to compete or cater the loan business in Nueces County, Texas, for a period of five (5) years from date of sale of his interest." (emphasis added)

She testified she was aware of this clause at the time Pay Day Loans was formed and thought that she would not violate its terms if she did not sell her partnership interest. She further testified that at the time of trial she was still a partner of Flour Bluff Finance Company and that she had not sold her interest in this partnership.

The record also indicates Lillie Bryant received Flour Bluff Finance Company's profit and loss statements until January 1972; she reported Flour Bluff partnership income and loss on her tax returns until 1975; Flour Bluff partnership tax returns listed her as a partner through 1975; she received $500 in the Fall 1971 and $1,000 in February 1972 representing her share of profits in Flour Bluff Finance Company. We agree with plaintiffs' statement that this evidence is not necessarily evidence that Lillie Bryant was involved in carrying on the partnership business of Flour Bluff Finance Company. We note, however, that she accepted the profit, tax benefits and company statements without protest or comment. This evidence coupled with the virtually uncontradicted testimony that she participated in the partnership business to the same extent as the other silent partners, that she considered herself a partner at the time of trial, and that she tried to circumvent the covenant not to compete by retaining her partnership share, all clearly show that she did not withdraw from the partnership business of Flour Bluff Finance

Company prior to her association with Pay Day Loans. We hold that there is insufficient evidence to support the jury's answers to special issues one and two and that the verdict based on these issues is so contrary to the overwhelming weight of all the evidence as to be manifestly unjust. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

In points of error 15 through 18B plaintiffs contend that there is "no evidence" and "factually insufficient" evidence that the date of the alleged dissolution was July 27, 1971 and therefore the trial court erred in awarding $7,917.75 to Lillie Bryant based on the jury's answer to special issue twelve. In addition, plaintiffs attack the jury's finding that the reasonable net cash market value of Flour Bluff Finance Company partnership on July 27, 1971 was $31,671.00. Because we have sustained plaintiffs' factual sufficiency points directed to special issues one and two, there are no special issues to support a determination that a dissolution of Flour Bluff Finance Company took place, or if it did, the particular date of such dissolution. The trial court's judgment awarding Lillie Bryant $7,917.75 based on the jury's answers to special issues one, two and twelve was therefore error.

Plaintiffs next contend in effect that Lillie Bryant's fiduciary duty not to compete with Flour Bluff Finance Company continued beyond the alleged date of dissolution until the actual termination of the partnership and therefore the trial court erred in submitting issues one and two and in rendering judgment against plaintiffs.

 Section 21 of the Texas Uniform Partnership Act provides in relevant part as follows:

"(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any *transaction connected* with the formation, conduct, or *liquidation of the partnership* or from any use by him of its property." (emphasis added)

Section 21 specifically extends the fiduciary duties owed by one partner to another to transactions connected with the partnership business during the period of winding up the partnership business and liquidating the partnership assets. See *Giddings Convalescent Home, Inc. v. Wilson*, 473 S.W.2d 246 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.); *Morgan v. Arnold*, 441 S.W.2d 897 (Tex. Civ.App.—Dallas 1969, writ ref'd n. r. e.); Howell, Texas Civil Practice, Vol. 19 § 184 (1973). The fiduciary relationship between partners comes to an end as to new business commenced after the date of dissolution which is *not* the subject of unfinished partnership business commenced prior to the date of dissolution, and subsequently completed during the winding up stage; or which is not the subject of a claim rightfully belonging to the partnership during the winding up stage. Compare: *Mathis v. Cactus Drilling Corporation*, 430 S.W.2d 78, 83 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.) and see *Bluestein v. Davis*, 86 Ill. App.2d 61, 230 N.E.2d 61, 64 (1967).

 The trial court did not err in submitting special issues one and two to the jury. These issues were relevant to Lillie Bryant's cross-action seeking a judicial determination that the Flour Bluff Finance Company's partnership had been dissolved and to a possible monetary award representing her share of the partnership as of the date of dissolution. Plaintiffs' points of error 2 and 7 are overruled.

 We next consider plaintiffs' points of error concerning the trial court's take nothing judgment on plaintiff's action against James Bryant and Harold Easley for allegedly inducing Lillie Bryant to assist them in forming and conducting the business of Pay Day Loans. Texas recognizes the tort of intentional interference with contract rights. When a person knowingly induces another to breach his contract with a third person, the third person has a right of action against the person causing the breach for any resulting damages. *Raymond v. Yarrington*, 96 Tex. 443, 73 S.W. 800, 803–04 (1903). To hold James Bryant or Harold Easley liable for inducing Lillie Bryant to breach the Flour Bluff Finance Company partnership agreement, there

must be evidence that they actually caused or brought about the breach. *Arabesque Studios v. Academy of Fine Arts,* 529 S.W.2d 564, 568 (Tex.Civ.App.—Dallas 1975, no writ); *Moore v. Sussdorf,* 421 S.W.2d 460, 461 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.). In addition, the actionable conduct must have been done willfully and intentionally with actual knowledge of the contract in question. *Frost National Bank v. Alamo National Bank,* 421 S.W.2d 153, 156–57 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.).

■ The statement of facts contains ample evidence to support the jury's findings to special issues four and seven that James Bryant and Harold Easley did not induce Lillie Bryant to assist them in forming and participating in the business of Pay Day Loans. Lillie Bryant testified that the initial conversation between herself, James Bryant, Harold Easley and Mrs. Easley regarding Pay Day Loans transpired in the Fall of 1971 in a social setting. Mr. Easley jokingly remarked that they should open up another loan company if the other partners in Flour Bluff Finance Company would not purchase her (Lillie Bryant's) share of the partnership assets. James Bryant testified that he considered this original discussion to be idle social conversation. Lillie Bryant testified that she did not discuss capitalization, profit or investment potential of Pay Day Loans with either Harold Easley or James Bryant. She also stated she did not assist them in selecting a site for the new company nor did she help in determining the type of loan company to be formed, although it was virtually uncontradicted that Lillie Bryant had good business skills and judgment. She testified that she had considered the covenant not to compete contained in the Flour Bluff Finance Company partnership agreement and had finally concluded that such partnership agreement would not be violated by her if she worked for Pay Day Loans.

The record before us is devoid of any affirmative acts or statements made by either James Bryant or Harold Easley to the effect that they enticed Lillie Bryant to work for Pay Day Loans. At most, they testified in substance that they "assumed" and "intended" for Lillie Bryant to be employed as company manager. This testimony is the only evidence in the record connecting James Bryant or Harold Easley to Lillie Bryant's participation in Pay Day Loans. The jury reasonably could and did conclude on ample evidence that neither James Bryant nor Harold Easley induced Lillie Bryant to assist in forming or participating in the business of Pay Day Loans and that she voluntarily participated and/or even initiated her own participation. We have considered the entire record and find that the jury's findings to special issues four and seven are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Plaintiffs' points of error 19, 20, 21, 22, 23, 24, 25, 27 and 28 are overruled.

■ Plaintiffs next present factual and legal sufficiency points complaining of the jury's negative findings to the damage issues ten and eleven. The jury found Flour Bluff Finance Company had suffered no damages by the competition of Pay Day Loans and that the plaintiffs were not entitled to punitive damages from any of the defendants, Harold Easley, James Bryant or Lillie Bryant. In order for plaintiffs' position to be tenable, the issues of which they complain must be material. The jury's negative findings to the liability issues, (Special issues 4 and 7), prevent plaintiffs from recovering any damages against defendants Harold Easley and James Bryant. Therefore, the jury's answers to the damages issues were immaterial as to them. *Miller v. Hood,* 536 S.W.2d 278 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n. r. e.); *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); *Rampy v. Allstate Insurance Company,* 492 S.W.2d 85 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.). Additionally, exemplary damages may not be awarded where actual damages are not found. *Giraud v. Moore,* 86 Tex. 675, 26 S.W. 945, 946 (1894); *Garza v. San Antonio Light,* 531

S.W.2d 926, 930 (Tex.Civ.App.—Corpus Christi 1975 writ ref'd n. r. e.). Points of error 11, 12, 13, 29, 30 and 31 are overruled.

 The damage issues, if any, as to Lillie Bryant must be retried in accordance with our remand to the trial court. On retrial of this case, defendant, Lillie Bryant, must show that a dissolution occurred and the date of such dissolution, if any. A partnership, once proved, presumptively continues until the contrary appears. *Heathington v. Heathington Lumber Company,* 398 S.W.2d 822 (Tex.Civ.App.—Amarillo 1966) on appeal after remand 420 S.W.2d 252 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.). On the other hand, plaintiffs are entitled to a reconsideration of whether Lillie Bryant breached her fiduciary duties by her employment with Pay Day Loans. In the original trial of this case no special issues were submitted to the jury concerning the actual damages caused by her alleged breach of such fiduciary duties. In *Latta v. Kilbourn,* 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169 (1893) the United States Supreme Court stated that one partner cannot carry on another business in competition or rivalry with his partners without being held accountable for any profit that accrues to him therefrom. Accord *Holmes v. Keets,* 80 U.S.App.D.C. 327, 153 F.2d 132 (1945); Hamilton, Texas Practice, Vol. 11 § 129 (1973). Our Courts have recognized this same principle. *MacDonald v. Follett,* 142 Tex. 616, 180 S.W.2d 334, 336 (1944); *Wampler v. Harrington,* 261 S.W.2d 883 (Tex.Civ.App.—Texarkana 1953, writ ref'd n. r. e.). The financial benefit gained by Lillie Bryant through her competition with Flour Bluff Finance Company, including her salary, bonuses, if any, and her community interest, if any, in James Bryant's interest in Pay Day Loans partnership, should be included as elements of damages in this case. See Article 6132b §§ 28–A (Extent of Community Property Rights of a Partner's Spouse), 26 (Nature of Partner's Interest in the Partnership) and 21 (Partner Accountable as a Fiduciary) Tex.Rev.Civ.Stat.Ann. (1970). Exemplary damages may be awarded only if a partner's act "partake of a wanton and malicious nature." *Ogle v. Craig,* 464 S.W.2d 95, 97 (Tex.Sup.1971). There must be more than strained relations between the partners to justify altering the standards of the finer loyalties required of partners in accordance with their fiduciary relationship. *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 788 (1938).

We therefore hold that plaintiffs' cause of action against James Bryant and Harold Easley, individually and d/b/a Pay Day Loans is hereby severed and the judgment of the trial court is as to them, affirmed. Plaintiffs' cause of action against Lillie Bryant for allegedly breaching her fiduciary duties as a partner and Lillie Bryant's cross-action for a judicial determination of the value of her partnership interest as of the date of the actual dissolution of Flour Bluff Finance Company is reversed and these causes are remanded to the trial court for a new trial. Rule 434, T.R.C.P. The costs are adjudged 80% against Lillie Bryant and 20% against the plaintiffs.

Affirmed in part and reversed and remanded in part.