Stephen B. RODGERS and Newell E. Boughton, Jr., Appellants,

v.

RAB INVESTMENTS, LTD., Appellee.

No. 05-90-01045-CV.

Court of Appeals of Texas, Dallas.

Sept. 6, 1991.

Jane E. Dillinger and Joel Held, Dallas, for appellants.

Carl A. Generes, Dallas, for appellee.

Before LAGARDE, OVARD and MALONEY, JJ.

## OPINION

MALONEY, Justice.

Stephen B. Rodgers and Newell E. Boughton, Jr. appeal from a judgment rendered for RAB Investments, Ltd. based on disputes arising out of a partnership. In six points of error, Rodgers and Boughton complain of: RAB's standing to assert any claim against them; the award of actual and exemplary damages and attorney's fees; the trial court's failure to render judgment for them; and RAB's failure to plead for, submit a jury issue on, or present evidence of exemplary damages for breach of fiduciary duty. We affirm the trial court's judgment.

## STATEMENT OF FACTS

RAB, a general partnership, and Rodgers and Boughton formed Viola Courts Partnership (Viola) to renovate an apartment complex known as Viola Courts. The partnership agreement required unanimous consent for dissolution of the partnership and transfers of partnership interests.

RAB invested $150,000 and received a fifty percent interest in the partnership. Rodgers and Boughton each received a twenty-five percent interest for originating the project. Viola obtained a $500,000 loan. Rodgers received a $15,000 sales commission at the closing of the loan. Viola purchased the apartments and began renovations. Rodgers and Boughton managed the project. Rodgers and Boughton each received $20,000 for their management efforts.

Cost overruns and delays occurred. The lender agreed to extend the maturity date of the original loan. In December 1984, Viola borrowed an additional $150,000. Because of the cost overruns and unexpected expenses, RAB formed a limited partnership, Viola Investors, Ltd. (Investors). On December 21, 1984, RAB purported to transfer its interest in Viola to Investors. Cost overruns continued. Rodgers and Boughton asked RAB for additional capital. When RAB refused to contribute more money, Rodgers and Boughton demanded additional capital and threatened to expel RAB from Viola. Rodgers and Boughton expelled RAB from Viola on April 11, 1985.

Shortly thereafter, the bank loans came due. The renovation was still unfinished. RAB agreed to a second $150,000 loan. The parties renewed all the bank loans and borrowed another $150,000 in May 1985.

Rodgers and Boughton sued RAB in May 1985. In addition to damages for RAB's breach of the partnership agreement, Rodgers and Boughton sought a declaratory judgment. They asked the court to (1) interpret the partnership agreement, (2) declare the expulsion of RAB legal, (3) establish the rights of the partners upon dissolu-

tion, and (4) award them attorney's fees. RAB counterclaimed alleging fraud, breach of contract, and breach of fiduciary duty. RAB sought actual and exemplary damages, dissolution of Viola, an accounting, and attorney's fees.

The bank loans again came due in August 1985. Rodgers and Boughton extended the existing loans and arranged for an additional $225,000 loan. RAB agreed to these acts on the condition that no funds be disbursed from the project except by unanimous consent of the parties or an order of the 95th Judicial District Court. Rodgers and Boughton agreed to RAB's conditions. Rodgers and Boughton later removed more than $40,000 from Viola as the commissions for the sale and lease of completed apartment units.

The jury found that RAB willfully breached the partnership agreement by transferring its partnership interest in Viola to Investors. Rodgers and Boughton did not ask the jury to determine any damages resulting from this breach. The jury also found that Rodgers and Boughton breached their fiduciary duty to RAB by expelling it on April 11, 1985 and by receiving commissions after entering into the last loan agreement.

The jury determined that $27,219.62 would compensate RAB for its damages resulting from the breach of fiduciary duty. The jury also assessed exemplary damages of $20,000 each against Rodgers and Boughton. Finally, the jury valued RAB's partnership interest in Viola as of April 11, 1985 at $613,500. The parties stipulated to the amount of their attorney's fees. The judgment awarded RAB the value of its partnership interest, damages for breach of fiduciary duty, exemplary damages, and attorney's fees. The trial court denied relief to Rodgers and Boughton.

## STANDING

■ In their second point of error, Rodgers and Boughton allege that RAB lacked standing to assert any claims in this lawsuit because RAB had no partnership interest in Viola. Rodgers and Boughton maintain that the fiduciary relationship between themselves and RAB ceased when RAB conveyed its partnership interest in Viola to Investors. In response, RAB argues that there was no effective transfer of RAB's partnership interest.

■ In order to maintain a suit, a person must have standing to litigate the matters in issue. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984).

One has standing to sue if:

(1) he has sustained, or is in immediate danger of sustaining, some direct injury as a result of the wrongful act of which he complains;

(2) he has a direct relationship between the alleged injury and claim sought to be adjudicated;

(3) he has a personal stake in the controversy;

(4) the challenged action has caused him some injury in fact ...; or

(5) he is an appropriate party to assert the public's interest in the matter as well as his own interest.

*City of Bells v. Greater Texoma Util. Auth.,* 744 S.W.2d 636, 639 (Tex.App.—Dallas 1987, no writ).

Rodgers and Boughton argue that the jury found that RAB breached the Viola partnership agreement. They contend that by breaching the partnership agreement, RAB lost all right, title, and interest in Viola. The jury was asked: "Did RAB Investments, Ltd. breach the Viola Courts partnership agreement by transferring the RAB interest in Viola Courts to Viola Investors Limited?" The jury answered, "Yes."

■ The jury does not determine whether a contract was breached. *See ITT Commercial Fin. Corp. v. Riehn,* 796 S.W.2d 248, 253 n. 3 (Tex.App.—Dallas 1990, no writ). Even the question of whether the transfer is effective cannot properly be submitted to the jury. The determination of effectiveness of a transfer is one of law, not of fact. *See C & C Partners v. Sun Exploration & Prod. Co.,* 783 S.W.2d 707, 715 (Tex.App.—Dallas 1989, writ denied).

To determine whether RAB's transfer of its partnership interest took away its legal standing, we must look to the partnership agreement. The Viola partnership agreement provides:

6.1 Transfer of Interest. Except as otherwise provided herein, no Partner may sell, assign, transfer, encumber or otherwise dispose of any interest in the Partnership or assets of the Partnership without the unanimous prior written consent of the other Partners.

. . . .

6.7 Transfer of Partnership Interest. . . . In the event a Partner desires to sell, assign, transfer or otherwise dispose of all or any part of the Partnership interest owned or held by him. . . [he shall,] as a condition precedent to his right to do so, by notice in writing inform all other Partners . . . and . . . offer such shares for sale to the other Partners. . . .

Under the partnership agreement, a partner could not transfer his interest without the unanimous prior written consent of the other partners. RAB did not obtain consent. The agreement established the right of first refusal in the other partners as a condition precedent to transfer. RAB did not offer its interest to the other partners.

It is undisputed that RAB's purported transfer of its partnership interest in Viola to Investors was not done as required by the partnership agreement. Rodgers and Boughton do not explain how the purported transfer is valid if the partnership agreement prohibits it. Rodgers and Boughton have not identified any part of the record that shows that RAB did anything more than attempt to transfer its interest.

■ The purported transfer was ineffective. See Pokrzywnicki v. Kozak, 354 Pa. 346, 347, 47 A.2d 144, 144 (Pa.1946) (per curiam); Rafkind v. Simon, 402 So.2d 22, 23–24 (Fla.Dist.Ct.App.1981); Chaiken v. Employment Sec. Comm'n, 274 A.2d 707, 709 (Del.Super.Ct.1971). Dissolution may be caused by the express will of any partner. See Thomas v. American Nat'l Bank, 704 S.W.2d 321, 323–24 (Tex.1986); Tex.Rev.Civ.Stat.Ann. art. 6132b, § 31 (Vernon 1970) [hereinafter cited Tex. UPA].

An expression of will requires some form of notice of dissolution to the other partners. Thomas, 704 S.W.2d at 324. At best, the purported transfer was an executory contract pending consent from the remaining partners. See Thomas v. American Nat'l Bank, 694 S.W.2d 543, 551 (Tex. App.—Corpus Christi 1985), rev'd on other grounds, 704 S.W.2d 321 (Tex.1986). As long as a partnership continues, the partners have a fiduciary relationship. Maykus v. First City Realty & Fin. Corp., 518 S.W.2d 887, 892 (Tex.Civ.App.—Dallas 1974, no writ).

A conveyance of a partner's interest under the Texas Uniform Partnership Act does not of itself dissolve the partnership. The assignee does not acquire the right to interfere in the management or administration of the partnership business or affairs. The assignee, by his contract, is entitled to any profits to which the assigning partner would be entitled, to reasonable information or account of partnership transactions, and to make reasonable inspection of the books. Tex. UPA § 27(1).

Something more than a mere transfer of one's partnership interest is required to dissolve the partnership. We hold that RAB's purported transfer of its partnership interest in violation of the partnership agreement was ineffective. RAB remained a partner in Viola. As a partner, RAB had standing to assert claims in this lawsuit arising out of the disputes between the partners, including its claim of breach of fiduciary duty. We overrule the second point of error.

### RECOVERY OF VALUE OF PARTNERSHIP INTEREST

■ In their first point of error, Rodgers and Boughton contend that the trial court erred in awarding $613,500 plus interest to RAB. They argue that RAB wrongfully caused the dissolution of Viola by transferring its interest to Investors. They allege that RAB's transfer entitled them to secure the value of that interest with a bond and continue the partnership activities. See Tex. UPA § 38(2)(b). They contend that the only purpose of jury question number

**548**

four was to establish the amount of the necessary bond for Viola to continue doing business after dissolution.

The trial court submitted the following question to the jury: "Find the fair market value of RAB Investments, Ltd.'s interest in Viola Courts partnership on April 11, 1985." The jury answered: "$613,500." We find nothing in the record to indicate that this question was intended to establish a bond amount. The jury question itself indicates otherwise. It expressly asks for the value of RAB's interest as of the date of the expulsion of RAB. The purported transfer of RAB's partnership interest occurred well before the (Vernon 1974) expulsion.

■ Rodgers and Boughton also maintain that RAB's pleadings do not support an award to RAB for the value of its partnership interest. RAB's counterclaim sought partition of the partnership property or a judgment of dissolution and a winding up of partnership affairs. This request for relief put Rodgers and Boughton on notice that RAB was seeking to recover the value of its interest in the partnership. *See* Tex. UPA § 42.

## DISSOLUTION BY EXPULSION

■ RAB contends that a dissolution of the partnership occurred by operation of law on April 11, 1985, when Rodgers and Boughton purportedly expelled RAB.

■ Every partner has the inherent power to dissolve a partnership even though the dissolution would violate the partnership agreement. *Karrick v. Hannaman,* 168 U.S. 328, 334–35, 18 S.Ct. 135, 138, 42 L.Ed. 484 (1897); *Infusaid Corp. v. Intermedics Infusaid, Inc.,* 739 F.2d 661, 667 (1st Cir.1984); *Woodruff v. Bryant,* 558 S.W.2d 535, 539 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The dissolution may breach the partnership contract, but it may be accomplished nonetheless. *Karrick,* 168 U.S. at 335, 18 S.Ct. at 138; *Woodruff,* 558 S.W.2d at 539; *McCollum v. McCollum,* 67 S.W.2d 1055, 1056 (Tex. Civ.App.—San Antonio 1934, no writ). A partner always has the power, although perhaps not the legal right, to dissolve the partnership. *Woodruff,* 558 S.W.2d at 539; *Collins v. Lewis,* 283 S.W.2d 258, 261 (Tex. Civ.App.—Galveston 1955, writ ref'd n.r.e.); *McCollum,* 67 S.W.2d at 1056. No partner has to continue in a partnership against his will. *Infusaid,* 739 F.2d at 667.

■ An ouster of a partner is a sufficient expression of will to dissolve the partnership. *Infusaid,* 739 F.2d at 670. The partnership continues to exist, at least for the purposes of winding up. Only on termination of the partnership does the relationship end. *Woodruff,* 558 S.W.2d at 539; *see* Tex. UPA § 30. Section 42 of the Texas Uniform Partnership Act lists the rights of an outgoing partner when the remaining partners continue the partnership business after dissolution. The outgoing partner may claim the value of his interest at dissolution and either interest on that value from the date of dissolution or profits attributable to the use of his right in the partnership property from the date of dissolution. The outgoing partner's right to profits ends when he receives the value of his interest. *Cauble v. Handler,* 503 S.W.2d 362, 366 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.); *see* Tex. UPA § 42.

The partnership agreement prohibits dissolution except by a unanimous vote of the partners. The agreement also provides that: "[a] Partner may at any time be expelled by the unanimous vote of the other Partners for willful or persistent breach of this Agreement, or conduct which tends to affect prejudicially the carrying on of Partnership affairs." The letter notifying RAB of its expulsion invoked this provision. It stated that RAB's refusal to make contributions was conduct that prejudicially affected the carrying on of partnership affairs.

Although the provision allowing expulsion does not use the word "dissolution," we conclude that dissolution is the substantive effect of expulsion under the contract. Rodgers and Boughton's letter stated: "RAB Investments, Ltd. has officially been expelled from the partnership and all interest of RAB Investments, Ltd. in such part-

nership is henceforth terminated." This statement by Rodgers and Boughton is a clear expression of their will to accomplish a dissolution.

The jury valued RAB's interest in Viola at $613,400 as of the date of RAB's expulsion. The trial court apparently determined that Rodgers and Boughton caused a dissolution as a matter of law when they expelled RAB. We agree with this determination. The trial court properly awarded this amount to RAB. We overrule Rodgers and Boughton's first point of error.

### DISSOLUTION BY DECREE

■ In their fifth point of error, Rodgers and Boughton allege that the trial court erred in not granting a decree of dissolution and attorney's fees. Rodgers and Boughton raise the same arguments under this point as they raised in their first point of error. We have already determined that dissolution occurred when Rodgers and Boughton expelled RAB from the partnership. *See* Tex. UPA §§ 29, 31. The trial court could not order dissolution of that which was already dissolved. The court's failure to issue a decree of dissolution was not error. We overrule the fifth point of error.

### EXEMPLARY DAMAGES

■ In their third point of error, Rodgers and Boughton contend that the trial court erred in awarding $40,000 in exemplary damages to RAB. They maintain that RAB submitted no pleadings, jury questions, or evidence, and that the jury made no finding to support an award of exemplary damages.

#### a. Sufficiency of the Evidence

At trial, Rodgers and Boughton objected to the submission of jury issue number nine on both legal and factual insufficiency of the evidence. However, on appeal, they only argue that there is no evidence of "willfulness" or "maliciousness" to support the jury's finding of exemplary damages for the breach of fiduciary duty.

#### 1. Standard of Review

■ A "legally insufficient evidence" point is a "no evidence" point presenting a question of law. We consider only the evidence and inferences which tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.,* 750 S.W.2d 174, 175 (Tex.1988). A "no-evidence" point is sustained only when the evidence discloses one of more of the following:

(1) a complete absence of evidence of a vital fact,

(2) the only evidence offered to prove a vital fact is barred from consideration by rules of law or evidence,

(3) the evidence offered to prove a vital fact is no more than a mere scintilla, or

(4) the evidence conclusively establishes the opposite of a vital fact.

*C & C Partners v. Sun Exploration and Prod. Co.,* 783 S.W.2d 707, 716 (Tex.App.—Dallas 1989, writ denied).

#### 2. Application of Law to Facts

The trial court charged the jury that it could award exemplary damages "when one party consciously disregards the rights of another, or acts maliciously, or with wanton disregard for the other party." When Rodgers and Boughton paid themselves $40,000 out of partnership funds, the declaratory judgment action was still pending. Rodgers and Boughton removed the funds from Viola even though they had promised RAB that no money would be removed, and the court had not determined RAB's interest in those funds. We hold that these facts are some evidence that Boughton and Rodgers consciously disregarded the rights of RAB. The evidence supports the jury's finding that exemplary damages were warranted.

#### b. Pleadings

■ Rodgers and Boughton complain that RAB's pleadings do not support a claim for exemplary damages for breach of fiduciary duty. Rodgers and Boughton maintain that without a jury finding that they committed fraud, RAB is not entitled

to exemplary damages. In finding that Rodgers and Boughton did not commit fraud, the jury found that RAB suffered no damage. Without actual damages, there can be no exemplary damages. *See City Prod. Corp. v. Berman,* 610 S.W.2d 446, 450 (Tex.1980).

RAB's First Amended Original Counterclaim requests "statutory and exemplary damages." In addition, RAB specifically asks for actual and exemplary damages for fraud. RAB argues that the Joint Pre-Trial Order lists as a contested issue "the amount of puntative [sic] or statutory damages to be assessed against Rodgers and/or Boughton." This statement raises punitive damages as an issue.

When no special exceptions are filed, we must liberally construe pleadings in favor of the pleader. *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982). A pleading must give the opposing party enough information to enable him to prepare a defense. *Id.* at 810. Rodgers and Boughton did not specially except to RAB's pleadings. The general allegations in RAB's pleadings together with the contested issues in the Pre-Trial Order put Rodgers and Boughton on notice that RAB would seek exemplary damages. The pleadings supported exemplary damages.

### c. Jury Questions and Findings

■ Rodgers and Boughton contend that without a jury finding their acts were wanton and malicious, there can be no exemplary damages. This following instruction preceded jury question number nine:

> **Exemplary Damages** You are instructed that "exemplary damages" may be awarded when one party consciously disregards the rights of another, or acts maliciously, or with wanton disregard for the other party. Exemplary damages are sums of money which are appropriate under the facts, as punishment or penalty for wrongdoing and as an example for the good of the public.... [E]xemplary damages depend upon, among other things, the kinds of the wrong, the conduct involved, the degree of blame of the wrongdoer, the situation of the parties,

and the extent to which such conduct offends the public sense of justice and propriety.

Jury question number nine asked: "What amount of money, if any, do you find should be assessed against Rodgers and Boughton as exemplary damages?" The jury answered with an award of $20,000 against each of appellants.

At trial, Rodgers and Boughton objected that there were no pleadings or facts to support exemplary damages for breach of fiduciary duty. They did not object to the court's failure to submit a jury question on "wanton" and "malicious" conduct. They raise for the first time on appeal the lack of this question. Any error in failing to submit a question was waived. *See* TEX. R.APP.P. 52(a).

■ Furthermore, when one or more of the elements of a ground of recovery are submitted to the jury, and one or more of the elements are omitted, a failure to object to the omission waives the complaint. TEX. R.CIV.P. 279; *Accent Builders v. Southwest Concrete Sys.,* 679 S.W.2d 106, 111 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Because there is some evidence to support the omitted issue, it is deemed found by the court in support of the judgment. TEX. R.CIV.P. 279; *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 165 (Tex.1982). We overrule the third point of error.

### RODGERS AND BOUGHTON'S ATTORNEY'S FEES

■ In their fourth point of error, Rodgers and Boughton argue that the trial court erred in denying their request for attorney's fees. As a general rule, the trial court does not award attorney's fees unless a statute or contract authorizes their award. *Prudential Ins. Co. of Am. v. Burke,* 614 S.W.2d 847, 849 (Tex.Civ. App.—Texarkana), *writ ref'd n.r.e. per curiam,* 621 S.W.2d 596 (Tex.1981).

Rodgers and Boughton argue that they are entitled to attorney's fees under section 38.001 of the Civil Practice and Remedies Code. Section 38.001 provides:

A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

. . . .

(8) an oral or written contract.

Tex.Civ.Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1986). Rodgers and Boughton note that the parties stipulated to the amount of attorney's fees incurred. They contend that the jury's finding that RAB had breached the partnership agreement entitles them to their stipulated attorney's fees.

A party must satisfy two requirements to obtain an award of attorney's fees. First, a party must prevail on a cause of action for which attorney's fees are recoverable. *See Vandever v. Goettee*, 678 S.W.2d 630, 636 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Second, the party must recover damages. *See Chapman Air Conditioning, Inc. v. Franks*, 732 S.W.2d 737, 741 (Tex.App.—Dallas 1987, no writ). As this Court has stated previously, "there must be a recovery of money, or at least something of value; otherwise, the attorney's fee award cannot be described as an 'addition' to the claimant's relief." *Riehn*, 796 S.W.2d at 256.

Rodgers and Boughton pleaded breach of contract and obtained jury findings establishing such breach. However, they did not submit a damage question on that cause of action to the jury. Without a jury finding of damages or a recovery of money, there can be no award of attorney's fees. We overrule their fourth point of error.

### RAB'S ATTORNEY'S FEES

In their sixth point of error, Rodgers and Boughton complain of the trial court's award of attorney's fees to RAB. Rodgers and Boughton maintain that, since the jury did not find that they breached the contract, no statutory basis exists for the award to RAB.

The jury was asked:

JURY QUESTION NO. 7

Do you find that Rodgers and Boughton breached their fiduciary duty to RAB Investments, Ltd. in any of the following respects:

. . . .

a. In expelling RAB Investments, Ltd. from the Viola Courts partnership on April 11, 1985.

. . . .

b. In paying commissions to themselves out of partnership funds subsequent to October 1, 1985.

The jury found that Rodgers and Boughton had breached their fiduciary duty to RAB in both respects. Rodgers and Boughton argue that no authorization exists for a claim of attorney's fees based on a tort action of breach of fiduciary duty.

RAB responds that their proposed jury charge read: "Do you find that Rodgers and Boughton breached their fiduciary duty to *or agreement with* RAB...." (Emphasis added.) The record does indicate RAB submitted this proposed charge and the trial court approved it. However, the actual question given to the jury omitted the words "or agreement with." RAB contends that this omission was immaterial since the jury must have found a breach of contract as a predicate to finding that the appellants had breached their fiduciary duty to RAB. Thus, RAB maintains that the award of attorney's fees should stand.

We do not agree with Rodgers and Boughton's argument that there is no basis for the trial court's award of attorney's fees. We also do not agree with RAB's argument that the jury necessarily found a breach of contract.

The ultimate issue of whether a contract has been breached is a question of law for the court. *Riehn*, 796 S.W.2d at 253 n. 3. Questions of law should not be submitted to the jury. *C & C Partners*, 783 S.W.2d at 715. In order to avoid submitting questions of law to the jury, the trial court must examine the contract to determine what the contract requires of the parties. The court should submit to the jury any disputed *factual* issues regarding failure of a party to conform to the contract. *Riehn*, 796 S.W.2d at 253 n. 3. When the

jury determines the conduct, it is not making a decision on the law. *Various Opportunities v. Sullivan Invs.,* 677 S.W.2d 115, 120 (Tex.App.—Dallas 1984, no writ).

The jury found that Rodgers and Boughton breached their fiduciary duty to RAB by paying themselves commissions out of partnership funds after October 1, 1985—the date Rodgers and Boughton agreed not to withdraw any more funds from Viola without unanimous consent of all parties or an order of the court. Thus, the jury found facts that establish as a matter of law that Rodgers and Boughton breached the October agreement.

RAB's pleadings requested attorney's fees on breach of contract. Accordingly, RAB was entitled to an award of attorney's fees as authorized by section 38.001 of the Civil Practice and Remedies Code. We overrule the sixth point of error and affirm the trial court's judgment.