**In re John William DEWS, Debtor.**

**John William DEWS,
Plaintiff/Counterdefendant,**

**v.**

**Julie H. DEWS,
Defendant/Counterclaimant.**

**Civ. A. No. 92–K–438.
Bankruptcy No. 90 B 4001 C.
Adv. No. 92 1068 CEM.**

United States District Court,
D. Colorado.

April 6, 1993.

Robert M. Duitch, Colorado Springs, CO, for plaintiff/counterdefendant.

Eric Johnson, Stephen E. Snyder, Denver, CO, for defendant/counterclaimant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is an adversary proceeding in bankruptcy. It is before me because Defendant Julie Dews has asserted the right to a jury trial but has not filed a claim against the bankruptcy estate. Ms. Dews has moved for summary judgment, claiming her debtor ex-husband's action under § 548(a)(2) is without merit because the transfer he challenges occurred more than one year before bankruptcy.

### I. *Facts.*

Unless otherwise noted, the following facts are undisputed. John Dews and Julie Dews were divorced in 1981. John Dews executed a note in favor of Julie Dews on October 18, 1984 as part of their property settlement. When John Dews failed to make payments under the note, Julie Dews obtained a judgment against him for $638,-395.13, plus interest. She recorded judgment liens against John Dews' property in several counties.

On March 21, 1986, the parties executed an agreement whereby John Dews was to assign Julie Dews a 17 percent interest in the First South Birch Company, a Colorado joint venture, in exchange for her agreement to file a satisfaction of the judgment against him. Under the assignment, Julie Dews was to become a full, voting member of the joint venture and was to receive partnership income proportionate to her 17 percent interest. John Dews would retain a 8.7 percent interest in the venture. The agreement provided that John Dews would obtain from the other partners their written consent to the assignment and Julie Dews' admission to the partnership.

The agreement also contained a provision granting John Dews an option to repurchase the 17 percent interest. The parties disagree whether the option was for one or for two years. The agreement required the assignment to be placed into escrow during the option period. It provided that the assignment "shall be effective to transfer ownership of the interest described therein to [Julie Dews] immediately upon delivery to the Escrow Agent," and that the managing partner of the venture was to recognize Julie Dews "as the owner of the interest described in the assignment and ... pay all money and other things of value accruing to said interest to the Judgment Creditor so long as the assignment remains in escrow."

On March 26, 1987, when the escrow was to have closed, Roland Wilson, the managing partner of the First South Birch Company, notified Julie Dews that the partnership believed the documents deposited into escrow were not the ones it approved and that it would not authorize release of the assignment from escrow until the matter was resolved. The form of assignment agreement to which the partners believed they had consented contained language permitting John Dews to extend the repurchase option for one additional year. Wilson also informed Julie Dews that the partnership would hold in escrow any income payable to her on account of her interest.

On April 1, 1987, Julie Dews filed a civil action in state court against the partnership and John Dews individually for, among other things, an order declaring her rights as a joint venturer in the First South Birch Company. On June 25, 1987, the state court entered an order granting Julie Dews' motion for a preliminary injunction. In that order the court found:

3. Defendant John W. Dews failed to pay Julie Dews as required by the[ir] divorce and Julie Dews obtained a judgment against John W. Dews in an amount in excess of $638,000.00 plus interest.

4. In March 1986, Defendant John W. Dews assigned 17% of his interest in

First South Birch Company joint venture to Julie Dews to satisfy the judgment.

5. All joint venturers consented to the assignment in writing and all parties before the Court agree that the joint venturers consented to the assignment.

6. Plaintiff and Defendants disagree over the form of the assignment agreement.

7. It makes no difference which version of the assignment agreement applies herein. The assignment was agreed to by all relevant parties and Julie Dews was paid her pro rata share of the distributions for 12 months.

The state court then ordered the partnership to pay Julie Dews all distributions withheld since March 1, 1987 and any future distributions.

On January 14, 1988, the parties reached a settlement and stipulated to the dismissal of the state court lawsuit. Under the settlement, Julie Dews was to be fully recognized as a partner in the venture and the partnership agreed to prepare a new assignment approved by all partners on or before January 15, 1988 (or within 30 days thereafter, if the partnership was unable to obtain the necessary signatures before that date). After the stipulation was filed, attorneys for Julie Dews and the partnership disagreed whether she was bound by certain amendments to the joint venture agreement. As a result, Julie Dews did not sign the new assignment until April 7, 1989, although John Dews had executed it on March 8, 1988.

On April 4, 1990, John Dews filed his petition for bankruptcy under Chapter 11. On January 27, 1992, he commenced the instant adversary proceeding under § 548(a)(2) of the Code, seeking to avoid as a fraudulent transfer the assignment of the 17 percent interest to his ex-wife. The court withdrew the reference of the proceeding on September 23, 1992.

## II. *Merits.*

Julie Dews moves for summary judgment, claiming that John Dews' § 548(a)(2) proceeding is without merit because the assignment of the 17 percent interest occurred more than one year before bankruptcy. Summary judgment is appropriate when "there is no genuine issue of fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When a party "fails to ... establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted against him. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Section 548(a)(2) permits the trustee or a debtor in possession to recover for the benefit of the estate any transfer of an interest of the debtor in property made within one year of the filing of a bankruptcy petition if the debtor received less than reasonably equivalent value for the interest transferred. *See* 11 U.S.C. § 548(a)(2). " 'What constitutes a transfer and when it is complete is a matter of federal law.' " *Barnhill v. Johnson,* ⸺ U.S. ⸺, ⸺, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) (citing *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945)). The term "transfer" is defined expansively in the Code to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property or an interest in property ..." 11 U.S.C. § 101(54) (as identified in statute); *Barnhill,* ⸺ U.S. at ⸺, 112 S.Ct. at 1390. Absent controlling federal law, the terms "property" and "interests in property" are determined under state law. *Barnhill,* ⸺ U.S. at ⸺, 112 S.Ct. at 1389.

John Dews argues that his transfer of the 17 percent interest did not occur until April 7, 1989, the date Julie Dews signed the new assignment prepared by the partnership after the parties settled the state court action. He goes on to reason that the new assignment could not be effective absent the consent of the remaining partners, which occurred sometime after that date and within one year of his bankruptcy filing. I disagree.

■ The determination of the effectiveness of a transfer of a partnership interest

is one of law. *Rodgers v. RAB Invs., Ltd.,* 816 S.W.2d 543 (Tex.App.1991). Here, the state court found that the Dews' dispute over the term of John Dews' repurchase option made no difference in the effectiveness of the assignment and that the other partners had consented to the admission of Julie Dews to the venture. I reach the same conclusion.[1]

John Dews has never asserted that he did not intend to assign his interest to Julie Dews on March 21, 1986, the date of the original assignment, or any time thereafter. He has not attempted to exercise his option to repurchase. Though the parties have disputed the effectiveness of that initial transaction, nothing has occurred since that date to invalidate it. The partnership consented to the initial assignment, reaffirmed that they had given their consent in the state court proceedings, and gave their consent to the new assignment executed as part of the settlement. Except for the approximate three-month period in which Julie Dews' partnership earnings were held in escrow pending resolution of the state court action, she has continuously been recognized as a partner in the venture since the March 21, 1986 assignment.

 Alternatively, even assuming some deficiency in the partnership's consent to the assignment, I conclude that the transfer cannot be avoided. By making the March 21, 1986 assignment, John Dews transferred to Julie Dews a valuable interest in property. A purported transfer of a partnership interest is an executory contract pending the consent of the remaining partners. *See Rodgers,* 816 S.W.2d at 547. Colorado law provides that a partner's assignment of his interest in the partnership does not dissolve the partnership and entitles the assignee to the profits which would have been due the assigning partner. Colo. Rev.Stat. § 7–60–127 (1986). It does not entitle the assignee to participate in the management of the partnership, however. *Id.*

Courts interpreting identical statutory provisions have held that a purported transfer of a partnership interest absent the consent of the other partners nevertheless conveys an interest in the profits of the venture. *See, e.g., Zoltanski v. Akst (In re Zyndorf),* 80 B.R. 876, 878 (Bankr. N.D.Ohio 1987); *Rodgers,* 816 S.W.2d at 547. The right to these profits is an interest in property under Colorado law. Colo. Rev.Stat. § 7–60–124. Therefore, John Dews transferred to Julie Dews an interest in property on March 21, 1986, but that transfer is not avoidable under § 548(a)(2) because it occurred more than one year before bankruptcy. Accordingly,

IT IS ORDERED THAT Defendant Julie Dews' motion for summary judgment is GRANTED.

---

1. Julie Dews urges me to give res judicata or collateral estoppel effect to the state court's findings in granting her motion for preliminary injunction. Generally, preliminary injunction determinations are not accorded preclusive effect. *See Don King Prods., Inc. v. Douglas,* 742 F.Supp. 741, 754–55 (S.D.N.Y.1990). Julie Dews has identified no facts to permit me to deviate from this principle.