ACCEPTED
12-14-00310-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/30/2015 3:20:36 PM
CATHY LUSK
CLERK

## NO. 12-14-00310-CV
## IN THE
## TWELFTH COURT OF APPEALS
## TWELFTH COURT OF APPEALS DISTRICT
## FOR THE STATE OF TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/30/2015 3:20:36 PM
CATHY S. LUSK
Clerk

**BRANDON SAXON,** **Appellant**


**vs.**


**GROVE CLUB LAKE, INC.,** **Appellee**


**Appealed from the County Court at Law**
**Smith County, Texas**
**Cause No. 61,853**


**BRIEF OF APPELLEE,**
**GROVE CLUB LAKE, INC.**


PAUL M. BOYD
Texas State Bar No. 02775700
KEVIN G. GIDDENS
Texas State Bar No. 24076877
1215 Pruitt Place
Tyler, Texas 75703
903/526-9000
903/526-9001 (FAX)
boydpc@tyler.net
Kevin.giddens@suddenlinkmail.com

ATTORNEYS FOR APPELLEE

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iv

ARGUMENT AND AUTHORITIES .....................................................................2

I.           Standards of Review .................................................................2

II. ISS NO. 1     The Evidence Supports the Trial Court's Judgment...................3

SUB-ISS NO. 1     Saxon violated the Bylaws..........................................................3

A.     The evidence suggests that the trial court could have believed the Club's witness rather than Saxon. .......................................................3

SUB-ISS NO. 2     The Club did not violate the Bylaws. .......................................8

A.     The evidence suggests that the trial court could have believed the Club did not violate the Bylaws. .........................................................8

SUB-ISS NO. 3     The trial court did not hear any matter regarding a seizure of Saxon's home. ........................................................................9

III. ISS NO. 2     The Evidence Supports the Trial Court Granting a Directed Verdict against Appellant .........................................................10

IV. ISS NO. 3     The Evidence Supports the Trial Court not Awarding Attorney's Fees to Appellant ...................................................12

A.       Standard for recovery of attorney's fees. ...............................................12

B.       Appellant was not entitled to attorney's fees for defense against a

claim. ......................................................................................13

C.       Appellant cites cases that are not applicable to this case. ...................14

CONCLUSION ..............................................................................................15

PRAYER .......................................................................................................16

CERTIFICATE OF SERVICE ........................................................................17

CERTIFICATE OF COMPLIANCE ...............................................................18

Saxon's Original Answer and Counterclaim ...........................................Appendix 1

# TABLE OF AUTHORITIES

PAGE

**Cases**

Arrellano v. State Farm Fire & Cas. Co., 191 S.W.3d 852 (Tex.App.—Houston [14th Dist.] 2006, no pet.) ..................................................................................2, 3

Bradford v. Vento, 48 S.W.3d 749 (Tex.2001) ........................................................3

Brockie v. Webb, 244 S.W.3d 905, 910 (Tex.App.—Dallas 2008, pet. denied.) ...14

Cain v. Bain, 709 S.W.2d 175 (Tex.1986) ...............................................................3

City of Keller v. Wilson, 168 S.W.3d 802 (Tex.2005).........................................2, 3

City of Pharr v. Boarder to Boarder Trucking Serv., Inc., 76 S.W.3d 803 (Tex.App.-Corpus Christi 2002, pet. denied) ........................................................3

Dallas Cent. Appraisal Dist. V. Seven Inv. Co., 835 S.W.2d 75 (Tex.1992)..........12

De La Rosa v. Kaples, 812 S.W.2d 432 (Tex.App.—San Antonio 1991, writ denied) ..................................................................................................................15

Edlund v. Bounds, 842 S.W.2d 719 (Tex.App.—Dallas 1992, writ denied) ..........10

Foley v. Daniel, 346 S.W.3d 687 (Tex.App.—El Paso 2009, no pet.)....................10

Ford Motor Co. v. Ridgway, 135 S.W.3d 598 (Tex.2004).......................................2

Green Int'l, Inc. v. Solis, 951 S.W.2d 384 (Tex.1997) ...........................................12

Horizontal Holes, Inc. v. River Valley Enterprises, Inc., 197 S.W.3d 834 (Tex.App.—Dallas 2006, no pet.) ........................................................................15

Leon Springs Gas Co. v. Restaurant Equip. Leasing Co., 961 S.W.2d 574
(Tex.App.—San Antonio 1997, no pet.) ........................................................ 11, 13

Marathon Corp v. Pitzner, 106 S.W.3d 724 (Tex.2003) (per curiam).......................2

Melson v. Stemma Exploration & Prod. Co., 801 S.W.2d 601 (Tex.App.—Dallas
1990, no writ) ........................................................................................13

Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706 (Tex.1997) ..........................2

Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195 (Tex.2004) (per
curiam) ................................................................................................ 12, 14

Ortiz v. Jones, 917 S.W.2d 770 (Tex.1996) (per curiam) ......................................2

Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74
(Tex.2000) ............................................................................................10

Rodgers v. RAB Inv., Ltd., 816 S.W.2d 543 (Tex.App.—Dallas 1991, no writ) ...12

Shaw v. County of Dallas, 251 S.W.3d 165
(Tex.App.—Dallas 2008, pet. denied) ..............................................................5

State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 437 (Tex.1995)...................12

Weirich v. Weirich, 883 S.W.2d 942, 945 (Tex.1992)..........................................3

Wilson & Wilson Tax Servs. v. Mohammed, 131 S.W.3d 231, 240 (Tex.App.—
Houston [14th Dist.] 2004, no pet.)................................................................13

**Statute**

Tex. Civ. Prac. & Rem. Code Ann. § 38.001 ....................................................12

NO. 12-14-00310-CV
IN THE
TWELFTH COURT OF APPEALS
TWELFTH COURT OF APPEALS DISTRICT
FOR THE STATE OF TEXAS

_____

BRANDON SAXON,                                                    **Appellant**


vs.


GROVE CLUB LAKE, INC.,                                           **Appellee**

_____

**Appealed from the County Court at Law
Smith County, Texas
Cause No. 61,853**

_____

**BRIEF OF APPELLEE,
GROVE CLUB LAKE, INC.**

_____

TO THE HONORABLE COURT OF APPEALS:

Appellee, Grove Club Lake, Inc. ("the Club") submits this Brief of Appellee,

in accordance with Rules 9.4 and 38.2 of the TEXAS RULES OF APPELLATE

PROCEDURE and all local rules of this Court.  In support of the affirming the

judgment of the trial court, Appellee respectfully show the court as follows:

1

# ARGUMENT AND AUTHORITIES

## I. Standards of Review

A trial court's findings of fact for legal and factual sufficiency are reviewed with the same deference and under the same standards as jury verdicts. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996) (per curiam); Arrellano v. State Farm Fire & Cas. Co., 191 S.W.3d 852, 855 (Tex.App.—Houston [14th Dist.] 2006, no pet.).

In a legal sufficiency review, the court should look at all of the evidence in light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002). A legal sufficiency point of error is sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. Marathon Corp v. Pitzner, 106 S.W.3d 724, 727 (Tex.2003) (per curiam).

More than a scintilla of evidence exists if the "evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex.2004) (citing Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997)); See City of Keller v.

_Wilson_, 168 S.W.3d 802, 812 (Tex.2005). Evidence is less than a scintilla if "it is so weak as to do no more than create a mere surmise or suspicion of its existence." _Ford Motor Co_, 135 S.W .3d at 601. The appellate court must review "the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." _Bradford v. Vento_, 48 S.W.3d 749, 754 (Tex.2001) (citing _Weirich v. Weirich_, 883 S.W.2d 942, 945 (Tex.1992)); _See City of Keller_, 168 S.W.3d at 819–20.

In contrast, when an appellant challenges the factual sufficiency of the trial court's findings, the appellate court considers and weigh all the evidence in the record. _City of Pharr v. Boarder to Boarder Trucking Serv., Inc._, 76 S.W.3d 803, 807 (Tex.App.-Corpus Christi 2002, pet. denied). The appellate court sets aside the verdict only if it "is so against the overwhelming weight of the evidence as to be clearly wrong and unjust." _Arrellano_, 191 S.W.3d at 856 (citing _Cain v. Bain_, 709 S.W.2d 175, 176 (Tex.1986)).

## II. ISSUE NO. 1   The Evidence Supports the Trial Court's Judgment.

## SUB-ISSUE NO. 1        Saxon violated the Bylaws.

### A. The evidence suggests that the trial court could have believed the Club's witness rather than Saxon.

The key question in this case was whether Appellant Brandon Saxon ("Saxon") violated the Bylaws of Grove Club Lake, Inc., ("Bylaws") by having William Hodge as an unauthorized visitor at Appellee Grove Club Lake, Inc., ("the

3

Club"). It is uncontested that Mr. Hodges was at the property without Saxon being present at least 14 times. 2 RR 82. The trial court held that Mr. Hodges was an unauthorized visitor and not service personnel. 3 RR 15. The evidence is factually sufficient to support the trial court's judgment.

The only witnesses in this case were Debbie Malone, secretary of the Club, and Brandon Saxon. 2 RR 15; 2 RR 78. The thrust of Ms. Malone's testimony was that Mr. Hodge did not fall within the term "service personnel". "Service personnel" included lawn maintenance appliance repair, construction, and general home maintenance. 2 RR 22. Mr. Hodge was actually an unauthorized visitor. 2 RR 29.

Saxon testified that he hired Mr. Hodges as service personnel, specifically as a house sitter. This house sitting service agreement was put in writing in September 2012. 2 RR 90. Mr. Hodges' duties included protecting Saxon's belongings, caring for Saxon's dog, and day-to-day operations such as lawn care. 2 RR 89.

This trial boiled down to whether the trial court believed Saxon's house sitting service agreement was an attempt to circumvent the Bylaws or served legitimate ends. In a bench trial, the trial court is the sole judge of the credibility of the witnesses and may believe one witness over another and resolve any conflicts or inconsistencies in the testimony. Shaw v. County of Dallas, 251

4

S.W.3d 165, 169 (Tex.App.—Dallas 2008, pet. denied). The judgment reflects the judge's assignment of credibility more toward the Club's witness rather than Saxon.

As discussed in Saxon's brief, the Bylaws distinguishes members and associate members from nonmembers. Article 2 Section A of the Bylaws addresses the categories of "members", "associate members", "visitors", and "service personnel". 2 RR 51. Ms. Malone testified that all categories but members and associate members are nonmembers. *Id.* Visitors are nonmembers that can enjoy privileges of members only if a member is present. 2 RR 52. However, service personnel cannot enjoy lake privileges even if a member is present. *Id.* Thus, a logical reading of the Bylaws limits service personnel even more than a visitor.

It would be illogical to extend service personnel the power to stay overnight for extended periods of time. The effect of the Bylaws is a prohibition for any nonmembers staying overnight without a member present. 2 RR 54. There is no dispute that a visitor could not stay overnight without a member present. 2 RR 53. But Saxon wants to interpret portions of the Bylaws related to service personnel in a very limited manner without reviewing the Bylaws as a whole. In Saxon's interpretation, a plumber could not use the lake but would be allowed to stay

overnight at the Club indefinitely. This interpretation conflicts with the purpose of distinguishing between members and associate members versus nonmembers.

Even if Saxon's argument is correct, there is evidence that Mr. Hodge acted more as an unauthorized visitor rather than service personnel. First, Mr. Hodge stayed the night at Saxon's home. 2 RR 30. Ms. Malone testified that no other member's service personnel stayed the night at a member's house. 2 RR 22. There is evidence that it was not necessary for Mr. Hodge to stay the night. Ms. Malone testified that not every member lives at the Club full-time. 2 RR 22. In fact, Ms. Malone herself did not live at the Club full-time. *Id.* The Club is a private area with its own private lake. 2 RR 8. There was no evidence presented that Mr. Hodge's overnight stays protected Saxon's assets due to some danger at this private club. There was no evidence that Mr. Hodge had to remain at Saxon's house after maintaining the house, lawn, and dog. 2 RR 88. Even if service personnel are allowed to stay the overnight under the Bylaws, there was evidence that Mr. Hodge's actions extended from service personnel into an unauthorized visitor.

Second, the evidence suggests that Mr. Hodge was actually a de facto roommate and was referred to as "service personnel" to circumvent the Bylaws. Mr. Hodge was somehow related to Saxon either as a stepbrother or brother-in-law. 2 RR 29. Mr. Hodge moved furniture into Saxon's home and moved this

6

furniture out of the home when Mr. Hodge left. 2 RR 22. This would be very stranger behavior for a dog sitter or contractor. Even a house sitter will not typically move their own furniture into the house they are watching. Moving furniture is the behavior of a roommate, not service personnel. Undoubtedly, a roommate that does not qualify as an associate member would be a violation of the Bylaws. Saxon did not refer to Mr. Hodge as a roommate because this would violate the Bylaws. A document entitled "House Sitting Agreement" was drafted rather than a lease. 2 RR 80. However, the evidence shows that Mr. Hodge's behavior was in reality that of a roommate making Mr. Hodge an unauthorized visitor. Thus, there is evidence to support the trial court crediting the Club's witness over Saxon's testimony.

There is evidence to suggest that Mr. Hodge was an unauthorized visitor rather than service personnel and Saxon violated the Bylaws by allowing Mr. Hodge to be at the Club without Saxon present. Thus, because the finding is not so contrary to the overwhelming weight of the evidence as to be unjust, the evidence is factually sufficient to support the trial court's finding.

**SUB-ISSUE NO. 2       The Club did not violate the Bylaws.**

   **A. The evidence suggests that the trial court could have believed the Club satisfied all conditions precedent.**

Saxon argues that the Club violated their own Bylaws by not performing a proper investigation.  However, there is evidence that the Club consistently warned Saxon of these violations prior to pursuing this lawsuit.

The Club met with Saxon regarding unauthorized visitors.  Saxon's claim that the Club never allowed Saxon a hearing to submit his side of the story ignores the uncontested evidence that the Board of Directors for the Club ("Board") met with Saxon regarding unauthorized visitors.  2 RR 71; 2 RR 83. The Board made Saxon aware that future violations could result in a fine.  2 RR 84.  The Board also contacted Saxon regarding the fact that Mr. Hodges was not considered service personnel and could not stay overnight prior to the fines related to this lawsuit.  2 RR 85.

Saxon also complains that the Club acted without any complaints from other members.  Saxon had multiple complaints from members regarding Mr. Hodge staying as overnight visitor.  Ms. Malone testified that Glen Ab Walters and Troy Mayner complained against these violations prior to the Board assessing fines.  2 RR 68-69.  There is evidence that the Club had received complaints from members before fining Saxon.

8

An investigation that does not violate the Bylaws according to Saxon's brief is circular and an impractical interpretation of the Bylaws. Saxon would require a club with around 60 members to hold a formal investigation for every violation and subsequent violation allowing the member to speak at every opportunity. Thus, a member such as Saxon would have at least 14 hearings for the exact same violation rather than the single meeting Saxon was given with the Board. This suggested process is not a logical reading of the Bylaws.

There is evidence that the Club investigated Saxon's violations in conformity with the Bylaws. Thus, because the finding is not so contrary to the overwhelming weight of the evidence as to be unjust, the evidence is factually sufficient to support the trial court's finding.

**SUB-ISSUE NO. 3**      **The trial court did not hear any matter regarding a seizure of Saxon's home.**

Saxon improperly argues an issue not raised with the trial court. There was no evidence presented of foreclosure by the Club. Furthermore, no foreclosure was sought by the Club at trial. This issue was moot before trial because Saxon paid the assessments related to his property and the Club had no grounds to request foreclosure. 3 RR 14. Foreclosure was not a requested remedy in the Club's closing and was not even addressed by the trial court. 3 RR 14-15.

The appellate court should not review of the actions of a trial on an issue that was not presented to it at the time. Barnard v. Barnard, 133 S.W.3d 782, 789

9

(Tex.App.—Fort Worth 2004, pet. denied.). This issue was moot at trial and should not be considered on appeal.

### III. ISSUE NO. 2 The Evidence Supports the Trial Court Granting a Directed Verdict against Appellant

The evidence is legally sufficient to support the trial court granting a directed verdict against Saxon's counterclaim.

A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to a judgment. Edlund v. Bounds, 842 S.W.2d 719, 723 (Tex.App.—Dallas 1992, writ denied). A trial court may order a directed verdict in favor of a defendant when: (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; or (2) the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex.2000).

Presumptively, Saxon's counterclaim for violation of Bylaws is a breach of contract claim. 1 CR 100. The elements of a contract are: (1) The existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. Foley v. Daniel, 346 S.W.3d 687, 690 (Tex.App.—El Paso 2009, no pet.).

Saxon failed to present a scintilla of evidence for actual damages on his breach of contract claim. "Damages" is a necessary element of a breach of contract claim. See Id. Saxon failed to present evidence of any damages other than attorney's fees. Saxon's presented evidence only for "attorney's fees and [Saxon's] court costs." 2 RR 99. Saxon did not present evidence on all four (4) elements for breach of contract, thus the directed verdict was proper.

Furthermore, Saxon's counterclaim was not a true claim for affirmative relief. To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it. Leon Springs Gas Co. v. Restaurant Equip. Leasing Co., 961 S.W.2d 574, 577 (Tex.App.—San Antonio 1997, no pet.). Saxon would have no claim for affirmative relief had the Club abandoned their own breach of contract claim. Saxon's entire claim was a strategy of avoidance against the Club's claims. See Id. at 578.

Because Saxon failed to present even a scintilla of evidence regarding actual damages and Saxon's counterclaim was not a claim for affirmative relief, the evidence is legally sufficient to support the trial court's directed verdict against Saxon's counterclaim.

**IV. ISSUE NO. 3 The Evidence Supports the Trial Court not Awarding Attorney's Fees to Appellant**

**A. Standard for recovery of attorney's fees.**

As a general rule, attorney's fees are not recoverable unless allowed by statute or by contract. See Dallas Cent. Appraisal Dist. V. Seven Inv. Co., 835 S.W.2d 75, 77 (Tex.1992). Attorney's fees may be recovered in a claim for breach of contract. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

As the Texas Supreme Court has made clear, section 38.001 requires recovery of damages for a claimant to be eligible to recover attorney's fees. See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex.1997). In 1995, and again in 1997, the Texas Supreme Court stated that for a party to recover attorney's fees under section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." Green Int'l, 951 S.W.2d 384 at 390 (quoting State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 437 (Tex.1995)); See Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195 (Tex.2004) (per curiam) ("it was not entitled to recover attorney's fees because it was not awarded damages on its breach of contract claim"); Rodgers v. RAB Inv., Ltd., 816 S.W.2d 543, 551 (Tex.App.—Dallas 1991, no writ) ("Without a jury finding of damages or a recovery of money, there can be no award of attorney's fees.").

**B. Appellant was not entitled to attorney's fees for defense against a claim.**

Here, Saxon did not recover on his counterclaim and was not awarded damages. Rather, only the Club recovered on their breach of contract claim for 14 separate violations by Mr. Saxon and was awarded $765.00. 3 RR 15; 4 RR 341-2.

At most, Saxon's claim for recovery is based upon some type of defense of a claim argument. Section 38.001 does not provide for attorney's fees for a party's successful defense against a claim. Wilson & Wilson Tax Servs. v. Mohammed, 131 S.W.3d 231, 240 (Tex.App.—Houston [14th Dist.] 2004, no pet.); Melson v. Stemma Exploration & Prod. Co., 801 S.W.2d 601, 604 (Tex.App.—Dallas 1990, no writ).

As stated above, Saxon's counterclaim is not an action independent of the Club's claim. Leon Springs Gas Co., 961 S.W.2d 574 at 577. Saxon would not have a claim if the Club nonsuited their claims. Furthermore, Saxon does not have a claim for attorney's fees because there is no claim for damages. See Leon Springs Gas Co., 961 S.W.2d 574 at 578.

Because Saxon failed to present even a scintilla of evidence regarding actual damages and Saxon's counterclaim was not a claim for affirmative relief, the evidence is legally sufficient to support the trial court's denial of Saxon's attorney's fee.

13

**C. Appellant cites cases that are not applicable to this case.**

The cases relied upon by Appellant are inapplicable to this case. Each of the cases specifically require recovery of damages for a party to be awarded attorney's fees.

As noted above, Mustang mandates the award of damages to recover attorney's fees. The case states that "Mustang did have a valid claim against Driver, it was not entitled to recover attorney's fees because it was not awarded damages on its breach of contract claim." Mustang, 134 S.W.3d 195 at 201. Here, the trial court found that Saxon did not have any valid claim against the Club.

The facts of Brockie bear no similarity to this case. Brockie at its core is an intervening suit by an attorney against a party for nonpayment of legal fees. Brockie v. Webb, 244 S.W.3d 905, 910 (Tex.App.—Dallas 2008, pet. denied.). In Brockie the sued party counterclaimed the attorney for legal malpractice. Id. at 910-911. In Brockie, the claim for monetary damages related to unpaid legal fees was intertwined with the counterclaim for legal malpractice, thus the attorney's fees associated with the defense were indistinguishable. Id. The court generally stated that attorney's fees necessary to defend a counterclaim for legal malpractice could be awarded. Id. at 910. However, attorney's fees were not actually awarded in this case. Id. at 911. Brockie should not be interpreted as allowing attorney's fees for claims without any actual damages. Likewise, the case cited in Brockie

14

had a claim for actual damages in the amount of $15,000.00 in the counterclaim. See De La Rosa v. Kaples, 812 S.W.2d 432, 434 (Tex.App.—San Antonio 1991, writ denied). Unlike Brockie and the cases the court cites, Saxon has no underlying claim for any damages.

Horizontal Holes states the opposite of Saxon's claim. Horizontal Holes holds that a party may not recover attorney's fees from a counterclaim without damages. Horizontal Holes, Inc. v. River Valley Enterprises, Inc., 197 S.W.3d 834, 836 (Tex.App.—Dallas 2006, no pet.). In Horizontal Holes, the counter-plaintiff was awarded attorney's fees but there was no indication of actual damages in the court's findings of fact, conclusions of law, or judgment. Id. Horizontal Holes held that an award of attorney's fees without actual damages would be improper. Id. Awarding Saxon attorney's fees on the counterclaim without actual damages would be in direct contradiction with Horizontal Holes.

The case law referenced by Saxon does not expand recovery of attorney's fees to a point which counterclaims without any affirmative relief may recover attorney's fees. The evidence is legally sufficient to support the trial court's denial of Saxon's attorney's fee.

## CONCLUSION

The evidence is factually sufficient to support the trial court's finding that Saxon violated the Bylaws and the Club did not violate the Bylaws. No evidence

15

was presented a trial regarding a foreclosure by the Club and this should not be addressed on appeal. The evidence is legally sufficient to support the trial court's directed verdict granted against Saxon and the denial of Saxon's attorney's fees. The trial court's judgment should be affirmed.

## PRAYER

For these reasons, Appellee, Grove Club Lake, Inc., ask this Court to affirm the trial court's judgment.

BOYD & BROWN, P.C.


BY:     /s/ Kevin G. Giddens
          PAUL M. BOYD
          State Bar No. 02775700
          KEVIN G. GIDDENS
          State Bar No. 24076877
          1215 Pruitt Place
          Tyler, Texas 75703
          903/526-9000
          903/526-9001 (FAX)
          boydpc@tyler.net
          Kevin.giddens@suddenlinkmail.com

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of April, 2015, a true and correct copy of the foregoing, *Brief of Appellee Grove Club Lake, Inc.*, was duly served via the following:

| | | |
|---|---|---|
| **Sean Healy**<br>HEALY LAW OFFICES, P.C.<br>113 E. Houston St.<br>Tyler, Texas 75702-8130<br>Telephone: (903) 592-7566<br>Fax: (903) 592-7589<br>genghis@healylaw.com<br><br>***Counsel for Brandon Saxon*** | ☐<br><br>X<br><br>☐<br><br>☐<br><br>☐ | Messenger<br><br>Facsimile<br><br>Certified Mail – RRR<br><br>First Class Mail<br><br>Via Overnight |
| **E. Glenn Thames, Jr.**<br>POTTER MINTON, P.C.<br>110 N. College Avenue<br>Suite 500<br>Tyler, Texas 75702<br>Telephone: (903) 597-8311<br>Fax: (903) 593-0846<br>glennthames@potterminton.com<br><br>***Counsel for Brandon Saxon*** | ☐<br><br>X<br><br>☐<br><br>☐<br><br>☐ | Messenger<br><br>Facsimile<br><br>Certified Mail – RRR<br><br>First Class Mail<br><br>Via Overnight |

/s/ Kevin G. Giddens

## CERTIFICATE OF COMPLIANCE

Appellee, Grove Club Lake, Inc., state that there are 4,330 words contained in Appellee' Brief. In determining the word count, counsel for Appellee relies on the word count stated on the bottom ruler in his Microsoft Word document.

Respectfully submitted,

BOYD & BROWN, P.C.

BY:      /s/ Kevin G. Giddens
         PAUL M. BOYD
         State Bar No. 02775700
         KEVIN G. GIDDENS
         State Bar No. 24076877
         1215 Pruitt Place
         Tyler, Texas 75703
         903/526-9000
         903/526-9001 (FAX)
         boydpc@tyler.net
         Kevin.giddens@suddenlinkmail.com

ATTORNEYS FOR APPELLEE

# Saxon's Original Answer and Counterclaim

Appendix 1

FILED
KAREN PHILLIPS
COUNTY CLERK

CAUSE NO. 61,853

?03 AU 19 PM 4:00

| | | |
|---|---|---|
| GROVE CLUB LAKE, INC.<br>Plaintiff, | § | IN THE |
| | § | |
| | § | COUNTY COURT AT LAW |
| V. | § | |
| | § | IN AND FOR |
| BRANDON SAXON | § | |
| Defendant. | § | SMITH COUNTY, TEXAS |

SMITH COUNTY, TEXAS
BY _____ DEPUTY

## DEFENDANT'S ORIGINAL ANSWER AND COUNTERCLAIM

NOW COMES BRANDON SAXON, named Defendant in the above-entitled and numbered cause, and files this Original Answer and Counterclaim, and shows the Court:

### 1. Party Identification Information

The last three numbers of Brandon Saxon's driver's license number are 098. The last three numbers of Brandon Saxon's social security number are 347.

### 2. General Denial

Defendant denies each and every allegation of Plaintiff's Original Petition, and demands strict proof thereof as required by the Texas Rules of Civil Procedure.

### 3. Special Exceptions

Defendant submits the following exceptions to Plaintiff's Petition:

a.   Plaintiff's allegations are so general that Defendant does not have fair notice of the claim.

b.   The pleadings for breach of contract do not plead all the elements necessary to support the claim because Plaintiff omitted the element of a valid, binding contract.

c.   The pleadings for injunctive relief do not plead all the elements necessary to support the claim because Plaintiff failed to allege immediate harm, the lack of a valid remedy at law, and the likelihood of succeeding on the merits.

d.   There is no contract between Plaintiff and Defendant. Defendant has no duty to follow Plaintiff's instructions or to comply with its Bylaws.

e.   The Bylaws and other governing documents of Plaintiff are ambiguous.

4.   **Affirmative Defenses**

Defendant claims Plaintiff's suit is barred by estoppel.

Defendant claims Plaintiff's suit is barred by the doctrine of waiver.

Defendant has failed to enforce and failed to comply with its own Bylaws.

Plaintiff failed to provide the most basic due process to Defendant.

Plaintiff's treatment of Defendant, including the alleged penalties, assessments, and fines, are unconscionable, discriminatory, arbitrary, and capricious.

5.   **Counterclaim**

Defendant fully performed his obligations under the terms of the Bylaws. Plaintiff has materially violated its own Bylaws by its acts and omissions, including the acts and omissions of its officers, directors, agents, and employees. Plaintiff's acts and omissions caused damages to Defendant. The Court should award damages to Defendant for these breaches.

6.   **Attorney's Fees**

Defendant should be awarded a judgment for all costs and reasonable and necessary attorney's fees incurred herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas.

## PRAYER

Defendant prays the Court deny all relief requested by Plaintiff, enter judgment in favor of Defendant, and grant such other and further relief as Defendant may be entitled to in law or in equity.

Respectfully submitted,

**HEALY LAW OFFICES, P.C.**
113 E. Houston St.
Tyler, Texas 75702-8130
Tel: (903) 592-7566
Fax: (903) 592-7569

By: _____
SEAN P. HEALY
State Bar No. 00785953
Attorney for BRANDON SAXON

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party

in accordance with the Texas Rules of Civil Procedure on August 19, 2013.

_____
SEAN P. HEALY
Attorney for BRANDON SAXON